G52SBUR1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

        v.                          15 CR 95 (AJN)

NICO BURRELL, et al.,

           Defendants.

------------------------------x
                         New York, N.Y.
                         May 2, 2016
                         10:00 a.m.


Before:

                HON. ALISON J. NATHAN,

                         District Judge




                  APPEARANCES

PREET BHARARA
    United States Attorney for the
    Southern District of New York
RACHEL MAIMIN
    Assistant United States Attorney

DAVID MESROBIAN
    Attorney for Defendant Michelle Jemison

LINDSAY LEWIS
    Attorney for Defendant Gerard Bass

JUDITH VARGAS
    Attorney for Defendant Nico Burrell

RICHARD SOLANO
    Attorney for Defendant Lamar Francis (not present)

XAVIER DONALDSON

G52SBUR1

```
 1          Attorney for Defendants Robert Feliciano, Martin Mitchell

 2   ED WALDRON
          Attorney for Defendant Rasheid Butler
 3
     ROBERT L. PEABODY
 4        Attorney for Defendant Jafar Borden

 5   JONATHAN SUSSMAN
          Attorney for Defendant David Jones
 6
     SUSAN WALSH
 7        Attorney for Defendant Fabian Morrison

 8   DANIEL HOCHHEISER
          Attorney for Defendant William Reid
 9
     ANTHONY L. RICCO
10        Attorney for Defendant Marlon Roberts

11   GLEN McGORTY
          Attorney for Defendant Rai Thomas
12
     JESSICA A. ADAMS
13        Attorney for Defendant Stephan Clarke

14   JOSEPH D. NOHAVICKA
          Attorney for Defendant Brian Richards
15

16

17

18

19

20

21

22

23

24

25
```

G52SBUR1

1          (Case called)

2          MS. MAIMIN:  Good morning, your Honor.  Rachel Maimin

3     for the government.

4          THE COURT:  Good morning, Ms. Maimin.

5          What I would like to do for the appearances of defense

6     counsel, I will state the defendant's name, and I will ask

7     defense counsel either representing that defendant or standing

8     in today for purposes of our scheduling conference for that

9     defendant, to stand and state your name.  I will ask, with the

10    marshals' consent, that the defendant whose name is called

11    please stand so I can see them as well while counsel is

12    indicating.

13         Do we have an agreement with that to the marshals?

14         On behalf of Michelle Jemison.

15         MR. MESROBIAN:  Your Honor, David Mesrobian standing

16    in for Joanna Hendon for Michelle Jemison.

17         THE COURT:  Gerard Bass.

18         MS. LEWIS:  Lindsay Lewis standing in for Joshua

19    Dratel for Gerard Bass, who is in the first row to the far

20    right.

21         THE COURT:  For Nico Burrell.

22         MS. VARGAS:  Good morning.  Judith Vargas on behalf of

23    Mr. Nico Burrell, who is standing now.

24         THE COURT:  Lamar Francis, I understand, has medical

25    issues that precluded his attendance today, Mr. Solano?

4

G52SBUR1

1        MR. SOLANO:  Good morning, your honor.  Ricardo Solano

2   on behalf of Lamar Francis.  I have not spoken to him.  That is

3   my understanding as well.  He was aware there was a conference

4   today, scheduling conference.  Given the nature of the

5   conference, I am fine waiving his appearance for purposes of

6   today only.

7        THE COURT:  Thank you.

8        Robert Feliciano.

9        MR. DONALDSON:  Your Honor, Xavier Donaldson, actually

10  standing up for Marlon Kirton, who is not here today.  He spoke

11  to Mr. Feliciano and he is okay with it.

12       THE COURT:  Thank you.

13       Rasheid Butler.

14       MR. WALDRON:  Edward Waldron for Rasheid Butler,

15  standing in for Kelly Sharkey, who was called away to the

16  District of New Jersey.  She is representing Mr. Butler and he

17  is all right with my representation today.

18       THE COURT:  Thank you.  Good morning.

19       For Jafar Borden.

20       MR. PEABODY:  Good morning.  Robert Peabody from

21  Jackson Lewis.  I am here representing Mr. Borden.  He and I

22  talked before obviously today.  I'll be representing him today.

23       THE COURT:  Thank you and good morning.

24       For David Jones.

25       MR. SUSSMAN:  Jonathan Sussman for Mr. Jones, who is

1    standing.

2            THE COURT:  Good morning to you both.

3            For Fabian Morrison.

4            MS. WALSH:  Good morning, your Honor.  Susan Walsh on

5    behalf of Fabian Morrison, who is standing also.

6            THE COURT:  Good morning to you both.

7            William Reid.

8            MR. HOCHHEISER:  Daniel Hochheiser for Mr. Reid, who

9    is standing.  Good morning, your Honor.

10           THE COURT:  Good morning to you both.

11           For Marlon Roberts.

12           MR. RICCO:  Good morning, Anthony Ricco for

13   Mr. Roberts, who is way in the back sitting alone.

14           THE COURT:  Thank you.  Good morning.

15           For Martin Mitchell.

16           MR. DONALDSON:  Xavier R. Donaldson on behalf of

17   Mr. Mitchell.

18           THE COURT:  Good morning.

19           For Rai Thomas.

20           MR. McGORTY:  Glen McGorty on behalf of Mr. Thomas,

21   who is standing.

22           THE COURT:  Good morning to you.

23           Stephen Clarke.

24           MS. ADAMS:  Good morning, your Honor.  Jessica Adams

25   Goodwin Procter representing Stephan Clarke.  My colleague,

G52SBUR1

1   Meghan Spillane, who was not able to be here, is also

2   representing Mr. Clarke.

3            THE COURT:  Thank you.

4            On behalf of Brian Richards.

5            MR. NOHAVICKA:  Joseph Nohavicka for Brian Richards.

6            THE COURT:  Let me say to the defendants that I am

7   Judge Nathan.  I will be the trial court judge, federal

8   district court judge, handling this case.

9            Moving forward, we have somewhat of a case management

10  challenge given the substantial number of defendants charged in

11  this indictment.  There are 62 defendants who have been

12  charged, so I am running a series of conferences today with

13  15 to 20 defendants at a time to facilitate the process.  We

14  don't have a courtroom large enough for everyone at once.  That

15  is how we will proceed.

16           There is another case that will be referred to

17  throughout the proceeding today, at points, called

18  United States v. Parrish in front of a different judge.  The

19  arrests in that case were made at the same time as this case,

20  and the allegations in the indictment are that this case and

21  that case involve rival gangs.  So we will be proceeding

22  potentially along similar scheduling paths, so I wanted to make

23  sure it was clear why that case may be referred to throughout

24  this proceeding.

25           I did put out an order to defense counsel last week

G52SBUR1

asking that they consider the order that Judge Kaplan entered

in that case so that we can use it as a jumping off point for

our scheduling discussion today, as well as the letter that the

government submitted in both cases recommending a basic

approach to the scheduling of this large matter.

What we will do today is, I'll ask, as I indicated I

would in my order, Ms. Maimin if you would just briefly provide

a summary of the charges and an overview of the discovery that

will be produced.  You have done so in your letter, but I'll

ask you to do it orally, with an opportunity for me to ask some

questions as I see fit, for purposes of understanding both the

quantity and quality of the anticipated discovery.

MS. MAIMIN:  Certainly, your Honor.

The indictment charges the defendants in one or more

of four counts.

The first count is a racketeering conspiracy.  There

are multiple predicate acts charged in connection with that

racketeering conspiracy, including narcotics trafficking and

acts of violence, as well as fraud crimes.

The second charge is a narcotics conspiracy.  It is

the same time period charged in the initial count, and it is

connected to the initial count in that it also charges members

of this gang with selling drugs.

The third count is a substantive narcotics

distribution count linked to the sale of narcotics within

G52SBUR1

 1    1,000 feet of playgrounds, schools, and public housing

 2    projects.

 3              Finally, your Honor, there is a firearms offense, a

 4    firearms discharge offense, that is linked to the racketeering

 5    conspiracy charge in the indictment.

 6              THE COURT:  Thank you.

 7              The anticipated categories of discovery, in describing

 8    as you go with some specificity, what in practical terms it

 9    will look like, so counsel can evaluate time for review and

10    other resources that may be necessary.

11              MS. MAIMIN:  Certainly, your Honor.

12              There are several categories of discovery.  I'll go

13    through each in turn.

14              The first is wiretaps.  In this case, we intercepted

15    four telephones for one to two months at a time.  We will

16    produce the recordings of those wiretap calls, as well as the

17    so-called line sheets for those calls.  In order to facilitate

18    the review of the wiretaps by defense counsel, to the extent we

19    have already identified particular defendants in this case on

20    the wiretap, we will produce those line sheets segregated from

21    the rest, in addition to the whole, so that defense counsel can

22    at least begin to focus their review on their defendant.  As we

23    identify additional defendants on the wiretap, which we do

24    expect to do, we will continue to provide such segregated

25    batches of wiretaps to the defense.

G52SBUR1

1          There are hundreds of hours of wiretap calls in this

2     case.  I would estimate dozens of hours of particularly

3     relevant wiretap material.  Of course there is also application

4     materials for the wiretaps that are relatively voluminous.

5     There were controlled purchases of narcotics in this case, some

6     of which were recorded.

7          We will produce any recordings, any invoices, and any

8     buy reports related to those controlled buys, which are

9     essentially brief forms that the officers fill out that provide

10    information about the controlled buys.

11         Another extremely voluminous category of evidence from

12    this case is social media.  Before last week, we had already

13    executed about a dozen search warrants on Facebook accounts

14    relating to -- or I would say more than a dozen -- relating to

15    this case, but last week we executed about over 100 search

16    warrants for social media accounts, Facebook, Instagram,

17    relating to this case.  So we haven't received the returns on

18    those yet, but we can expect, based on experience and the prior

19    returns in this case, that each such account, the paperwork can

20    range into the tens of thousands, or even in a couple of

21    instances, hundreds of thousands of pages per account.

22         That being said, each page is not full of relevant

23    information.  There is IP addresses, a lot of repetition,

24    photographs, and the like.  So it is quite voluminous, but it

25    is not quite as intimidating as it might sound at first.  We

G52SBUR1

will produce what we have in our possession as of the discovery
deadline.  And as we continue to receive returns from Facebook
and the other social media outlets, we will produce those as we
receive them.

        We have searched some cellular phones in this case
during the course of the investigation, but we also seized
dozens of cellular phones in this case pursuant to the
defendants' arrests.  We will be obtaining search warrants for
those phones within the next week.  We will produce the
application materials for those phones and we will produce
reports reflecting the contents of those phones.

        We have certain prison calls and e-mails for
defendants who were previously in state or federal custody.  We
will produce those.

        As I mentioned earlier, the racketeering conspiracy in
this case involves numerous acts of violence.  We have files
relating to certain of the homicides currently under
investigation, as well as other nonfatal acts of violence in
our possession.  We will produce, even though they are not
charged substantively at this time, the contents of those files
to the extent they contain Rule 16 discovery.  That will also
help to provide notice to the defendants that we are
considering adding additional substantive charges later on.

        There is a significant volume of pen registered GO
location data that was obtained in this case.  We normally just

G52SBUR1

1  produce the allocation materials for that and then afford

2  defense counsel the opportunity to review it at our office, or

3  the DEA, as the case may be, if they wish to.

4          We have searched multiple locations in this case.  To

5  the extent there is anything relevant that was seized pursuant

6  to search warrant, we will produce the search warrants and

7  invoices of seized evidence.

8          For each defendant, there is also material that is

9  specific to them.  That's their rap sheet and particular arrest

10  reports that pertain only to them.  We will produce those as

11  well.

12          We will also produce the reports of any statements

13  made after the defendants' arrests in this case.

14          That, your Honor, takes care of the main categories of

15  evidence in this case.  There might be some outlying

16  categories, but nothing that comes to mind at this time.

17          THE COURT:  All right.  We will turn in more detail to

18  the letter proposal, but on this point, your proposal in the

19  letter is to complete the disclosure of the information that

20  you have referred to that is in your possession within 30 days,

21  is that right?

22          MS. MAIMIN:  Yes, your Honor.

23          Ideally -- I don't want to jump the gun -- we would

24  have a discovery coordinator appointed.  We would produce the

25  hard drive containing this material, because it will have to go

G52SBUR1

1     on the hard drive because of the volume of data, within the

2     30-day deadline we proposed in our letter.  We will promptly

3     produce any material that comes into our possession after that

4     on a rolling basis.

5             THE COURT:  The theory is that discovery would not

6     begin until a discovery coordinator is in place?

7             MS. MAIMIN:  No, no.  Our goal would be to have a

8     discovery coordinator in place by the time our discovery

9     becomes due, so that we can give it to the discovery

10    coordinator who then distributes it.  That's what we usually

11    do.

12            If for some reason we can't locate a discovery

13    coordinator, we will produce it ourselves.  It is easier, I

14    think, for defense counsel to have that intermediator to help

15    organize the discovery in a way that suits their case strategy.

16            THE COURT:  One way or the other, 30 days, what you

17    have in your possession for Rule 16 discovery will be produced?

18            MS. MAIMIN:  One way or the other.

19            THE COURT:  OK.  Let's turn to the coordinating

20    discovery attorney point.  As was discussed at Judge Kaplan's

21    conference and it may be known to defense counsel, there are

22    three such individuals who have contracts with the

23    administrative office and none of them are available.  Jerry

24    Tryst, who works on these issues, is exploring someone else who

25    is not under contract with the AAO, but who is recommended for

G52SBUR1

1     the task.  She apparently is out of town until May 9.

2             We don't have an immediate answer on the availability

3     of a coordinating discovery attorney, but as the government's

4     letter proposed, assuming it is something desired by defense

5     counsel, then the government, and certainly through defense

6     counsel efforts and court efforts, will make every such effort

7     to find someone.

8             Let me ask -- I'll say my assumption, tell me if I am

9     wrong -- assuming someone can be found to take on the

10    assignment, that that is something defense counsel would be

11    interested in having in place?

12            Is there anyone who has any objection to the

13    appointment, in principal?

14            Obviously you need to know who it is and the specifics

15    of how it would work.  Is there any objection in principal to

16    the appointment of a coordinating discovery counsel?

17            MR. NOHAVICKA:  Your Honor, Joseph Nohavicka for Brian

18    Richards.

19            It is our belief that the amount of volume of

20    documentation that is relevant to my client is very little.

21    There is absolutely no reason for us to wait seven months or

22    17 months for production of these.  I know it was a 30-day

23    initial disclosure, but then they go over articulated discovery

24    schedule that calls for even more time.

25            THE COURT:  I had understood the government to say all

G52SBUR1

1    of what was just indicated would be produced within 30 days.

2                 MR. NOHAVICKA:  If that is the case, then that's fine.

3                 THE COURT:  Let's clarify.  Ms. Maimin, is that the

4    suggestion?

5                 MS. MAIMIN:  Yes.

6                 THE COURT:  Any concerns with that?

7                 MR. NOHAVICKA:  None at all.  That would make perfect

8    sense, because the amount of documentation they have for

9    Mr. Richards should not be that much.

10                Just so your Honor knows, he just came out of

11   incarceration a few weeks ago on something that was related to

12   all of this.  They used that litigation for furthering the bail

13   application as if it had just happened and as if it was

14   relevant to this particular litigation.

15                At most, they have three weeks of information on

16   social media, cell phones, whatever it is.  We would not need a

17   coordinator for the amount of information that would be

18   available for my client.

19                THE COURT:  Do you have an application, counsel?

20                In other words, is there something specific that you

21   would like me to consider asking the government to do with

22   respect to that?  The proposal is all of the discovery will be

23   produced within 30 days, so you'll have it, whether it is

24   through a coordinator or not, you'll have it.

25                MR. NOHAVICKA:  Then there is no objection to that.

G52SBUR1

1          THE COURT:  All right.

2          MR. NOHAVICKA:  Thank you.

3          THE COURT:  Thank you.

4          Any other concerns on the coordinator?

5          What I anticipate will happen is someone will be found

6     who has the ability to do this and some proposed order to that

7     effect that defense counsel have had an opportunity.  I think

8     it is a defense counsel motion request, so it would come in

9     through a proposed order.

10          I'll just ask, Ms. Maimin, that you continue to work

11    with Mr. Tryst.

12          And is there anyone in particular of the defense

13    counsel who would like to be a point person on this issue?  If

14    not here, I'll find someone in one of the other conferences.

15          MS. VARGAS:  Your Honor, I would be happy to stay in

16    touch with the government with respect to any findings.

17          As your Honor noted correctly, this is a defense

18    counsel motion, and it is usually one that is done ex parte to

19    the court because, in truth, the government hasn't a standing

20    in the decision as to whether or not or whom it would be for a

21    defense discovery coordinator.

22          THE COURT:  That's fine.  You're welcome to submit it

23    ex parte.  The government raised it in their letter, and to the

24    extent Ms. Maimin has the ability to help point defense counsel

25    in a direction, take it or don't take it.  That is up to you.

G52SBUR1

1   You could certainly be in touch with Jerry Tryst.

2           MS. VARGAS:  Right.

3           THE COURT:  I appreciate, Ms. Vargas, you serving as a

4   point person.

5           MS. VARGAS:  Yes, your Honor.

6           THE COURT:  Thank you.

7           Ms. Maimin.

8           MS. MAIMIN:  We will note for defense counsel that

9   Jessie Siegel and Andrew Patel are the point people on the case

10  before Judge Kaplan, and I have been working with them.  I'll

11  continue to do everything I can to facilitate this.

12          THE COURT:  Thank you.

13          That effort will be under way.  I hope it can be

14  worked out.  I'll await a proposed order for the appointment of

15  such a person from the defense counsel.

16          In the absence of that, the government will provide

17  the discovery individually to counsel --

18          MS. MAIMIN:  Yes, Judge.

19          THE COURT:  -- within 30 days?

20          One issue I know that came up in Judge Kaplan's

21  conference, at least one of his conferences, was a concern by

22  defense counsel expressed about access to discovery material in

23  electronic form by the defendants during incarceration, a

24  concern that perhaps with so many people at once seeking to

25  have access, that there might be logistical issues.

G52SBUR1

1          I think it wasn't in his order, it was in the

2     transcript of one of the conferences, he had asked for a letter

3     reporting back within ten days as to what the government is

4     able to work out to facilitate this and hopefully a joint

5     proposal for that.

6          MS. MAIMIN:  Yes, your Honor.

7          We are working with the jails on this, meeting with

8     them this week.  If your Honor wishes, I can also send a letter

9     or the same letter to your Honor updating the court about the

10    efforts we have made to facilitate the review of electronic

11    discovery by the defendants at the jail.

12         THE COURT:  I appreciate that.

13         Within ten days, I'll see a report on that?

14         MS. MAIMIN:  Yes, Judge.

15         THE COURT:  Thank you.

16         Are there any other defense counsel issues with

17    respect to just the immediate production of discovery and what

18    we have discussed so far?

19         Teeing this off of the government's proposal in the

20    letter and what appears to have been adopted, in part at least,

21    by Judge Kaplan in the Parrish case, that the case would then

22    proceed basically in two phases.  In the first phase, there

23    would be a conference scheduled for five months from now.  I

24    would not do what is my typical practice to set a motion

25    schedule and trial date at this point, given the volume and

G52SBUR1

1      complications, but instead set a conference five months,

2      approximately five months from now.

3              Ms. Maimin, I am going to articulate how I understand

4      the proposal.  You tell me if I have got the government's

5      suggestion correct.

6              We will set a conference for approximately five months

7      from now.  In advance of that conference, the government would

8      submit a severance motion that breaks the defendants into two

9      groups, those for whom the government anticipates filing a

10     superseding indictment adding additional charges and those that

11     the government does not.

12             With respect to those that the government does not

13     anticipate superseding to add any additional charges, at that

14     conference in five months, we would set a briefing schedule on

15     any motions and a trial or trial dates, depending on how many

16     defendants remain and are proceeding to trial.

17             That's my understanding of the government's suggestion

18     with respect to Phase 1?

19             MS. MAIMIN:  That's correct, your Honor.

20             THE COURT:  So then, to jump ahead, we will backtrack

21     and talk about some specific dates.  But then with respect to

22     phase two, those defendants for whom the government anticipates

23     superseding and bringing additional charges, and I understand

24     that includes potentially capital charges, capital eligible

25     charges --

G52SBUR1

1          MS. MAIMIN:  That's right.

2          THE COURT:  -- those defendants would come to a

3     conference approximately a year from now, and at that

4     conference, we would set a schedule for motions and trial or

5     trial dates?

6          MS. MAIMIN:  Yes, your Honor.

7          THE COURT:  In that context, we need to talk about a

8     schedule for the severance motions.  I know there was back and

9     forth with Judge Kaplan.  I would like to hear about this now,

10    Ms. Maimin, when the government would supersede by, because

11    that implicates, as you know, for anyone who potentially faces

12    capital eligible charges, the appointment of learned counsel

13    and the like.

14          Let's begin with, why don't you update me, Ms. Maimin,

15    on what you understand, what you intend with respect to the

16    timing of the superseding indictments.

17          MS. MAIMIN:  We think that what Judge Kaplan ordered

18    makes sense, which is that we would be required to add any

19    material charges by January 6, 2017, including capital charges.

20    We would not wait to preclear any defendants who will not be

21    facing the death penalty, but rather supersede and then move

22    through the death penalty process so that defendants have the

23    superseding indictment earlier.

24          I do have one update with respect to a colloquy I had

25    with Judge Kaplan, the appointment of learned counsel in

G52SBUR1

advance of a superseder, which is there are funds and there

will be attorneys to be appointed as learned counsel for any

defendants for whom we reasonably believe are likely to be

charged in a superseding indictment of capital defenses.

We would be in a position to advise defense on an

informal basis by the time we make the severance motion of any

defendants that fall into that category, at which point I

understand from Jerry Tryst, there will be funds to appoint

learned counsel, and they can get started representing their

clients even before the return of any superseder.

THE COURT:  That, I suppose, is a clarification of

Judge Kaplan's expressed concern that the statute authorizing

the appointment and compensation of learned counsel didn't seem

to attach until the indictment, but you're indicating that at

an administrative level, those funds would be available so that

upon the government's you called informal noticing of defense

counsel, if they represent anyone potentially facing a capital

charge down the road?

MS. MAIMIN:  That's correct, your Honor.

We reviewed the statute we talked about with Jerry

Tryst, and also talked about it with David Patton, who

coordinates the appointment of such counsel in our district.

There is no issue to the appointment of such counsel in advance

of indictment, and it probably is prudent in this case to avoid

any delay later on.

G52SBUR1

THE COURT:  Then let's talk about a proposed specific
schedule, and then I'll hear if there are any concerns from
defense counsel.

Let me just say, as a general matter, as I am
articulating dates for the purposes of our schedule, I deem it
sort of tentative for the moment until I get through the other
three conferences, to make sure everybody has an opportunity to
weigh in, but you should presume that what we tentatively agree
to at the conference, in the absence of persuasive objection at
the future two conferences, will be the schedule.

And I will, as Judge Kaplan did, memorialize at the
end of the day today in a written order that captures all of
the dates that we are discussing.

The first date to talk about would be the schedule for
a severance motion.

MS. MAIMIN:  We are happy with the September 27 date,
if it is amenable to your Honor.  We can make the motion in
both cases at the same time.

THE COURT:  The government would file, this is in
advance of a conference that will set a date for, in five
months' time, in advance of that a severance motion the
government would file on or before September 27, 2016, any
opposition due October 11, 2016, and any replies due
October 17, 2016.

Any concerns with that schedule from the defense?

G52SBUR1

1          Why don't we back up then and I'll indicate, I would

2     anticipate, Ms. Maimin, unless you have a different request, I

3     would propose scheduling the five month conference for

4     October 20, 2016, which is the day after the conference in

5     Parrish.

6          MS. MAIMIN:  That works.

7          THE COURT:  I'll raise with defense counsel that I am

8     proposing a conference date for five months out for Thursday,

9     October 20, 2016, and I will -- depending on how many people

10    are coming, if we need to stagger the conferences again --

11    presume I would start at ten a.m. and then noon and two, as I

12    did today.

13         We will get into the more specifics, but please hold

14    it on your calendar for the time being.  We have discussed then

15    the likely schedule for the severance motion.

16         Ms. Maimin, just to backtrack to what you said a

17    minute ago, you said at that time, September 27, 2016, is when

18    you will informally inform counsel?

19         MS. MAIMIN:  Yes.  I think the date for Judge Kaplan

20    was September 30.  Either one works, it is just a three-day

21    difference.

22         THE COURT:  September 27.  What does the informal

23    notice look like?

24         MS. MAIMIN:  We will notify them in writing, informal

25    meaning just as opposed to an actual superseding indictment.

G52SBUR1

1           THE COURT:  It will be on the docket?

2           MS. MAIMIN:  No, your Honor, we wouldn't put it on the

3    docket.

4           THE COURT:  Why not?

5           MS. MAIMIN:  Because it could potentially compromise

6    the ongoing investigation in this case if we notify certain

7    people about the likelihood of charges before the superseding

8    indictment.  That's why we try to wait to file superseders so

9    our investigation can proceed.

10          In this case, we are happy to do this in normal

11   notification.  We don't want to broadcast, in essence, what we

12   are planning on charging in the superseder.

13          THE COURT:  You will submit letters to individual

14   counsel indicating if or not their client faces a potential

15   superseder, including a capital charge?

16          MS. MAIMIN:  Yes, your Honor.

17          THE COURT:  Any concerns with that, defense counsel?

18          Thank you.

19          Next is the deadline for the actual filing of a

20   superseder, of any superseders adding new charges or additional

21   defendants.  Judge Kaplan set, as you said earlier, January 6,

22   2017, as at least the outside date, although he did express his

23   concern about the timing.  Perhaps what you have informed me

24   about the appointment of learned counsel takes care of that

25   concern?

G52SBUR1

1          MS. MAIMIN:  I hope so, your Honor, yes.

2          THE COURT:  Any objection from defense counsel to

3    setting January 6, 2017, as the outside date for the filing of

4    any superseders, adding new charges or additional, with the

5    understanding that you will hear by September 27 if there is

6    any risk of capital charges?

7          ALL PRESENT:  No objection, your Honor.

8          THE COURT:  Thank you.

9          Enterprise letters, Ms. Maimin?

10         MS. MAIMIN:  We will produce the initial enterprise

11    letter in this case simultaneously with the motion for

12    severance.

13         THE COURT:  If you could just add a little bit of

14    detail on what that includes and what it means?

15         MS. MAIMIN:  Certainly.

16         The enterprise letter is meant to provide notice to

17    defense counsel of the particular acts of violence we expect to

18    prove at a trial of the racketeering conspiracy charge.  It

19    provides our understanding at that time of who, when, and where

20    the incident took place, and a brief description of what the

21    incident was.  That would not be the final word on our expected

22    proof at trial.

23         We would at that time propose to the court a deadline

24    for a supplemental enterprise letter, but that will be the

25    first and complete as of that time list of the acts of violence

G52SBUR1

1    we would seek to prove.

2              THE COURT:  Those will be provided to individual

3    defendants?

4              MS. MAIMIN:  That we would provide to everybody and

5    the court, your Honor.  It is one letter for everybody and the

6    court.

7              THE COURT:  You would submit those, again, the

8    proposal would be the September 27 date?

9              MS. MAIMIN:  Yes, Judge.

10             THE COURT:  Any concerns with that, defense counsel?

11             ALL PRESENT:  No, your Honor.

12             THE COURT:  Thank you.

13             Then the next issue that I think to address, and this

14   was a deviation from the government's proposal that

15   Judge Kaplan initiated, which was a concern that, well, a

16   desire to have any motions that could be keyed off of the face

17   of the indictment be filed relatively soon so that any of those

18   issues could be addressed quickly, presumably any issues that

19   are present now might well be present in a superseding, any

20   superseding indictments, so there seemed little reason to wait.

21             His proposal was to bring any motions on the face of

22   the indictment specifically noting motions under Rule 12(b),

23   3(b), (i), (ii), (iii), and (v), so duplicity, multiplicity,

24   lack of specificity, failure to state an offense.

25             And Judge Kaplan set a briefing schedule on those

G52SBUR1

 1    motions filed, if any are available, filed on or before July 1,

 2    2016, oppositions would be due a month later, replies due a

 3    month after that, so that they would be submitted to me and

 4    fully briefed by September of this year.

 5            Ms. Maimin, is the government's request to proceed

 6    along a similar schedule or any request to deviate from that?

 7            MS. MAIMIN:  No, that makes sense to us, your Honor.

 8            THE COURT:  Defense counsel?

 9            Go ahead.

10            MR. DONALDSON:  Judge, I think regarding Mr. Mitchell,

11    my only concern with that is that I think I may want to wait

12    until I receive an enterprise letter to do that because it

13    would provide a little more into the indictment.

14            THE COURT:  Well, you wouldn't be precluding -- unless

15    you can think of something, and I am happy to hear it,

16    precluded from bringing motions down the road once we set a

17    motion schedule either at the five-month conference or the year

18    conference that would be raised as a result of the enterprise

19    letter, I think certainly you wouldn't be precluded from that.

20    Any that simply can be raised on the face of the indictment

21    alone are those that would be must be submitted by the July 1

22    date.

23            MR. DONALDSON:  I understand that, but I think -- I

24    guess I am thinking that the enterprise letter, the way

25    Ms. Maimin just described it, may give me a little more

G52SBUR1

1   information related to what I can file regarding the face of

2   the indictment by July 16.

3          THE COURT:  Just to help me, can you spin out an

4   example?

5          MR. DONALDSON:  No, but I am just thinking right now,

6   my brain is saying that is possible.

7          THE COURT:  It is not that you won't, you just can't?

8          MR. DONALDSON:  Right.

9          THE COURT:  Understood.

10          I can't either, which may be between the two of us, if

11   it existed, we would think of it.  I think what I would like to

12   do is set the date, and if you have a specific concern or

13   anyone has a specific concern with it, they should raise it in

14   a letter within a week.

15          MR. DONALDSON:  Within a week?

16          THE COURT:  Of today.

17          As I say, this is nothing that precludes available

18   motions down the road, it is meant to be just that which can be

19   raised on the face of the indictment.

20          Anyone else?

21          All right.  That's the schedule then I presume that

22   will be set at the end of the day on any of those initial

23   motions.

24          Next on my checklist is to ask if there are any

25   applications?  Anything else, any applications to address any

G52SBUR1

1   scheduling issues at this time?

2           MS. MAIMIN:  Not scheduling issues, your Honor.

3           THE COURT:  From the defense?

4           ALL PRESENT:  No, your Honor.

5           THE COURT:  Applications from the government?

6           MS. MAIMIN:  Yes.  We respectfully request that the

7   court exclude time pursuant to the Speedy Trial Act between

8   today, and if the court does schedule the next conference on

9   October 20, between today and October 20, in order to afford

10  the government the opportunity to collect and produce

11  discovery, the defense to review discovery, prepare any

12  potential motions, prepare for trial, and consider and discuss

13  potential pretrial dispositions of the case.

14          THE COURT:  Any objections?

15          ALL PRESENT:  No, your Honor.

16          THE COURT:  No objections.

17          Again, I'll hold this as a formal matter until the

18  last conference, but I do presume that I'll make a finding

19  excluding time between now and October 20, 2016, because the

20  interest of the defendants and the public is outweighed by the

21  necessity, further reasons articulated by the government, I

22  presume I'll make that finding at the last conference,

23  excluding time between now and October 20, 2016.

24          I also presume I will find under Section 3161(h)(7)

25  that the case is so unusual and complex due to the number of

G52SBUR1

```
1    defendants, the nature and scope of the prosecution, the volume
2    of discovery, that it would be unreasonable to expect adequate
3    preparation for pretrial preparation and for trial within the
4    time limits established by the Speedy Trial Act.
5              Again, I will hold that formal decision open until the
6    end of the third conference today, to make sure that there are
7    not any persuasive objections.
8              Any applications on behalf of defense counsel?
9              MR. RICCO:  Yes, your Honor.  Anthony Ricco for Marlon
10   Roberts, sitting way in the back there.
11             Judge, it occurred to me from sitting in on the
12   conference that this case falls under the service protocol for
13   case budgeting.  I think it would be a great aid to the court,
14   and of course to defense counsel, I know on behalf of
15   Mr. Roberts, we are going to be submitting a request for case
16   budgeting in this case.
17             THE COURT:  Yes.  Thank you, counsel, for raising it.
18             I agree and I think I e-mailed Mr. Tryst on Friday
19   asking his views and efforts on case budgeting.  Thank you for
20   raising that.
21             MR. RICCO:  Judge, one other point regarding
22   representation, because of these two cases includes almost two
23   thirds of our panel, the earlier that the capital eligible
24   defendants are identified the better, because capital counsel
25   more than likely is going to have to be brought in from
```

G52SBUR1

1    outside.

2              THE COURT:  I agree wholeheartedly.

3              Ms. Maimin, that is the request.  Efforts need to be

4    made even in the interim, I believe, on the court's part in

5    working with David Patton at the Federal Defenders to identify

6    potential learned counsel who could be appointed from out of

7    district, if necessary, and to the extent I think the

8    government's only involvement in that, Ms. Maimin, would be

9    providing conflict lists and the like.

10             MS. MAIMIN:  We are already planning to do that this

11   week pursuant to a conversation I had with David Patton last

12   week.

13             THE COURT:  Thank you.

14             Anything else from the defense counsel?

15             Let me just add one housekeeping matter.  It is my

16   individual rules that communications with the court, unless in

17   an emergency posture, be made in writing by letter through ECF,

18   unless there is a request to seal or redact the communication,

19   in which case I have, in my individual rules, the process for

20   doing that.  But it is my practice and requirement that

21   communications be in letter and filed on ECF or otherwise

22   pursuant to my rules for submission under seal or in redaction.

23             Anything else I can address at this time?

24             MS. MAIMIN:  Not from the government.  Thank you.

25             THE COURT:  Nothing from defense counsel?

G52SBUR1

1          MS. VARGAS:  Nothing from Mr. Nico Burrell, your

2     Honor.

3          THE COURT:  If there are any defense counsel who have

4     anything further, if you could indicate now.

5          In the absence of that, I do thank all defense counsel

6     for your efforts, and the government, as well as marshals and

7     staff.

8          We are adjourned.

9          (Adjourned)