G52SBUR1

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                          15 CR 95 (AJN)

5    NICO BURRELL, et al.,

6              Defendants.

7    ------------------------------x
                                     New York, N.Y.
8                                    May 2, 2016
                                     12:00 p.m.
9

10   Before:

11                  HON. ALISON J. NATHAN,

12                                   District Judge

13

14

15                    APPEARANCES

16
     PREET BHARARA
17        United States Attorney for the
          Southern District of New York
18   RACHEL MAIMIN
          Assistant United States Attorney
19
     DAVID MIKSTROM
20        Attorney for Defendant Michelle Jose Rodriguez

21   JEFFREY PITTELL
          Attorney for Defendant Javone Pearce
22
     DAVID GREENFIELD
23        Attorney for Defendant Douglas McClarty

24   WINSTON LEE
          Attorney for Defendant Anthony King
25
     KAFAHNI NKRUMAH

G52SBUR1

           Attorney for Defendants Anderson Ross, Martin Mitchell

MARILYN READER
     Attorney for Defendant Shaquille Dewar

MEGAN BENETT
     Attorney for Defendant Joel Hargrove

PAUL RINALDO
     Attorney for Defendant Shaquille John, Quayshawn Cannonier

SAM SCHMIDT
     Attorney for Defendant Shanice John

RUSSELL NEUFELD
     Attorney for Defendant Jamal Blair

RICHARD J. MA
     Attorney for Defendant Barffourt Abeberse

G52SBUR1

1          (Case called)

2          THE COURT:  I'll take appearances first from the

3  government.

4          MS. MAIMIN:  Good afternoon, your Honor.  Rachel

5  Maimin for the government.

6          THE COURT:  Good afternoon, Ms. Maimin.

7          What I'll do with the defendants is I'll state the

8  defendant's name and I'll ask defense counsel who is here on

9  their behalf to stand, state your name, and I will ask the

10  defendant, as I state your name, to stand at that moment as

11  well, so that I can see each of you and who is representing

12  you.

13          I'll note, we do have a full courtroom, and I want to

14  make sure everybody has room.  If we run out of room, there is

15  an overflow courtroom which is in this courthouse at room 444.

16  So you'll be able to, if for some reason you can't fit here,

17  you would be able to watch and listen to the proceedings from

18  that room.

19          There are some young folks here, and I will just ask,

20  if we run into issues with noise, I will ask that you proceed

21  to the overflow courtroom so that we can make sure that we can

22  proceed efficiently today and so that counsel and defendants

23  can hear everything that is taking place.  We will make sure

24  that everyone who wants to be present can be.

25          I have heard appearances on behalf of the government.

G52SBUR1

1    Turning to the defendants, the first defendant I'll ask to

2    stand is Jose Rodriguez.

3              MR. WIKSTROM:  Good afternoon, your Honor.

4              My name is David Wikstrom.  Mr. Rodriguez is my

5    client.  He is juror No. six, I guess.  I am joined by my

6    associate Joshua Fitz, who is sitting in the first row.

7              THE COURT:  Good afternoon to the three of you.  Thank

8    you.

9              Javone Pearce.

10             MR. PITTELL:  Good afternoon, your Honor.  Jeffrey

11   Pittell on behalf of Mr. Pearce, who is standing.

12             THE COURT:  Good afternoon to you both.  Thank you.

13             Douglas McClarty.

14             MR. GREENFIELD:  Good afternoon, your Honor.  David

15   Greenfield for Mr. McClarty, who was standing.

16             THE COURT:  I did see that.  Thank you.  Good

17   afternoon.

18             Anthony King.

19             MR. LEE:  Good afternoon, your Honor.  Winston Lee for

20   Mr. King.

21             Your Honor, it is important that I note that my

22   client's girlfriend, mother, brother, and sister are in court,

23   as well as his daughter, because they may not be able to take

24   two days off in a row and be present at tomorrow's bail review

25   hearing.  I wanted your Honor to note that they're here today

G52SBUR1

1    on his behalf.

2              THE COURT:  I appreciate that.  Thank you.

3              Anderson Ross.

4              MS. BENETT:  Good afternoon, your Honor.  Meghan

5    Benett, standing up on behalf of Kafahni Nkrumah, who is to

6    represent Mr. Ross.  I have talked to Mr. Ross about that

7    already.

8              THE COURT:  Thank you.

9              Yes, I should say, counsel who are representing, there

10   are few instances where we have other counsel standing in.

11   Thank you and good afternoon to you both.

12             Shaquille Dewar.

13             MR. RICCO:  Good afternoon, your Honor.  I am Marilyn

14   Reader, and I represent Shaquille Dewar.

15             THE COURT:  Good afternoon to you both.

16             Joel Hargrove.

17             MS. BENETT:  Good morning, your Honor.  Megan Benett,

18   again, for my client, Joel Hargrove, who is standing in the

19   jury box.

20             THE COURT:  Thank you.  Good afternoon to you both.

21             The next person listed, Ms. Maimin, I believe will be

22   at the next conference, but was indicated to be here at this

23   conference.  I wanted to get confirmation of that.  Devante

24   Joseph, your list indicated for this conference, I understand

25   will be at the next conference.

G52SBUR1

1              MS. MAIMIN:  Confirmed.

2              THE COURT:  Shaquille John.

3              MR. RICCO:  Paul Rinaldo for Mr. John.  Good

4    afternoon.

5              THE COURT:  Good afternoon to you both.

6              Quayshawn Cannonier.

7              MR. RICCO:  Paul Rinaldo.  With the court's

8    permission, I am standing in for Kerry Lawrence.  The defendant

9    has notification.

10             THE COURT:  Good afternoon to you both.  Thank you.

11             Shanice John.

12             MR. SCHMIDT:  Good afternoon, your Honor.  Sam

13   Schmidt.  Ms. John is standing up in the audience.  I am her

14   attorney.

15             THE COURT:  Good afternoon to you both.

16             Jamal Blair.

17             MR. NEUFELD:  Good afternoon, your Honor.  Russell

18   Neufeld for Jamal Blair.

19             THE COURT:  Good afternoon to you both.

20             Barffourt Abeberse.

21             THE DEFENDANT:  Good afternoon, your Honor.

22   Richard Ma appearing on behalf of Mr. Abeberse.

23             THE COURT:  Good afternoon to you both.

24             For the defendants, I am Judge Nathan.  I am the

25   district court judge who will be handling this matter going

G52SBUR1

1     forward.  I'll note that the case presents some management

2     challenges because of the large number of defendants who have

3     been named in the indictment.  This case involves 62 defendants

4     charged in the indictment.  As a result, I don't have a

5     courtroom big enough for everyone.

6                As I have just referenced, I am holding multiple

7     conferences throughout the day with approximately 15 to 20

8     defendants and their counsel in each conference, so if you hear

9     me refer to an earlier conference or a later conference, that's

10    why.

11               I'll also note I may at times refer to another cases

12    that called United States v. Parrish.  That's in front of a

13    different district court judge.  That case is also a large case

14    involving over 50 individuals who were arrested at the same

15    time.  That indictment and this indictment make allegations of

16    related gangs being charged in the two indictments.

17               Because that case is proceeding at the same time,

18    though in front of a different judge, the government has

19    proposed to both me and Judge Kaplan, who is handling that

20    case, an overall process for him for managing the two cases,

21    and Judge Kaplan has issued an order, a scheduling order in

22    that case, which I have referred defense counsel to so we can

23    use that as a point of reference for our conversation.

24               I'll note I will also refer to the earlier conference

25    as well where I made some preliminary decisions about how to

G52SBUR1

1  schedule and just confirm if there are any objections or

2  disagreements to the proposals.

3          For immediate purposes, I will ask the government to

4  recite again, for the benefit of these defendants and these

5  defense counsel, a summary of the charges in the case and a

6  description of the categories of evidence that will be produced

7  in discovery, and then we will turn to the specifics of the

8  scheduling conference.

9          Ms. Maimin.

10          MS. MAIMIN:  Beginning with the charges in the

11  indictment, the defendants are charged in one or more of four

12  counts.

13          The first charge is a racketeering conspiracy arising

14  from the defendants' participation in the Big Money Bosses

15  gang.

16          The second charge is a narcotics conspiracy charge.

17  It is relate to the racketeering conspiracy in that it also

18  relates to drug dealing by that gang.

19          The third charge is a substantive narcotics

20  distribution charge relating to the distribution or possession

21  with intent to distribute narcotics within 1,000 feet of a

22  public housing development, school, or playground.

23          The fourth count is a firearms offense.  It is the

24  discharge of a firearm, and that's connected to the

25  racketeering and narcotics conspiracies charged in Counts One

G52SBUR1

1       and Two.

2                   With respect to the categories of discovery

3       anticipated in this case, I will review them in turn.

4                   The first are wiretaps.  There were four wiretaps in

5       this case that led to hundreds of hours of intercepted

6       telephone calls.  There are dozens of what we believe, at this

7       point, at least to be relevant, so we will be producing

8       recordings and associated line sheets for wiretaps, as well as

9       the supporting application materials.

10                  THE COURT:  Just a moment.  I want to make sure

11      everybody can hear you.  Thank you.

12                  MS. MAIMIN:  We will be producing the recordings for

13      the wiretaps, as well as the supporting application materials

14      and the associated line sheets.  In order to facilitate defense

15      counsel's review of the wiretaps, we will identify for defense

16      counsel at this point our understanding of particular

17      defendants who are identified on the wiretaps by segregating

18      out those calls for those defendants.

19                  As I anticipate we will, we will continue to identify

20      additional defendants on the wiretap and we will, on a rolling

21      basis, tell defense counsel when that has happened when their

22      defendant has been identified on the wiretap.

23                  We also conducted multiple controlled purchases of

24      narcotics in this case by confidential informants and

25      undercover police officers.  With respect to those purchases,

G52SBUR1

we will be producing invoices of seized evidence, any video or

audio recordings of the buys, and the so-called buy reports,

which provide additional information about the transaction.

A particularly voluminous category of evidence in this

case will be social media, that is, material that we have

seized or are in the process of seizing pursuant to search

warrants of Facebook and other social media accounts that can

range per defendant into the tens or even hundreds of thousands

of pages.  However, that amount is not necessarily as large as

it seems because not every page has relevant material on it.

Some of it is technological information, a picture can take up

an entire page, and so forth.

Contents of cellular phones was another category of

evidence.  We have already obtained search warrants and

searched several cellular phones during the course of this

investigation, but we also seized numerous phones during the

arrest in this case.  We will expeditiously seek search

warrants for those phones.  We will provide the application

materials.  And as we produce reports relating to those phones,

we will produce the reports.

We did obtain through subpoena or request prison calls

and e-mails with respect to certain of the defendants who were

already in state or federal custody.  We will produce those.

To the extent that we have already obtained police

files, for instance, homicide files relating to acts of

G52SBUR1

1    violence that we would intend to prove in connection with the

2    racketeering conspiracy charge and/or seek to charge in a

3    superseding indictment, even though they are not currently

4    charged substantively, we will produce any Rule 16 material

5    contained in those files at this time.  And as we obtain

6    additional files, we will produce those on a rolling basis.

7              We did seek and obtain voluminous pen register and GO

8    location information in this case.  As is customary, what we

9    intend to do is provide the applications for that data so that

10    defense counsel can review and make any motions that they deem

11    appropriate, but we will simply make the location data

12    available to them at our office because of its volume.

13              We have searched multiple locations in this case.  We

14    will produce the application material and invoices of any

15    seized evidence.  As always, defense counsel will have the

16    opportunity to review any physical evidence at our office.

17              There will also be, as in every case, individualized

18    discovery consisting of the defendants, rap sheets, criminal

19    history reports, in particular arrest reports unique to that

20    defendant, and the marshal's intake form.  The government will

21    also produce post-arrest statements for particular defendants,

22    as the law requires.

23              THE COURT:  Thank you, Ms. Maimin.

24              What we discussed in the earlier conference involved

25    setting a deadline of 30 days from today by which the Rule 16

G52SBUR1

1    material that you have just gone through, that you have, will

2    be produced to the defendants within 30 days?

3              MS. MAIMIN:  That's correct, Judge.

4              THE COURT:  We also talked about at the last

5    conference the hope for the ability to appoint a coordinating

6    discovery attorney.

7              I have been in touch with Jerry Tryst for that purpose

8    and the government's letter proposal indicated its presumption

9    that defense counsel would desire the appointment of such a

10   coordinating discovery attorney in this case given the volume

11   of discovery.  The three individuals who are currently under

12   contract with the AAO for this purpose are not available, so

13   Mr. Tryst is working to try to find someone else.  He is

14   working with, in connection with Judge Kaplan's case, Andy

15   Patel.  And there is another defense counsel, Ms. Maimin?

16             MS. MAIMIN:  Yes.  It is Jesse Siegel, Andrew Patel,

17   and in the prior case here, Judith Vargas.

18             THE COURT:  Judith Vargas here has volunteered to help

19   with the efforts to identify a coordinating discovery attorney

20   so that we can get them in place and facilitate the access to

21   the discovery materials for defense counsel.

22             I did confirm with the government that whether we get

23   someone or not, the information has to be -- the information

24   that we have just discussed, discovery material, has to be

25   produced within the next 30 days, and to the extent that

G52SBUR1

1    additional material comes in on a rolling basis.

2              But I did want to ask, I assume defense counsel are,

3    in principal, interested in the appointment of coordinating

4    discovery counsel.  I just want to confirm, ask, if there are

5    any objections in principal to that?

6              MR. WIKSTROM:  David Wikstrom, your Honor.  No, no

7    objection whatsoever to that.

8              THE COURT:  Thank you.

9              Ms. Vargas has volunteered in this case to continue to

10   work as a point person with Mr. Tryst to identify someone and

11   hopefully we can get someone in place quickly.  I'll wait for

12   hopefully soon an application for that appointment soon.

13             We also discussed at the last conference ensuring, as

14   best we can, access to the discovery material by the

15   incarcerated defendants expressed some concern just about the

16   logistics of so many defendants at the same time needing access

17   to devices to view electronic material.

18             Ms. Maimin indicated that the government is working on

19   this and would submit a letter in ten days with what I hope is

20   a joint proposal for ensuring facilitation of the process.

21             Is that right, Ms. Maimin?

22             MS. MAIMIN:  Yes, your Honor.

23             THE COURT:  Any questions or concerns from defense

24   counsel on that?

25             Mr. Lee?

G52SBUR1

1          MR. LEE:  Yes, your Honor.

2          With regard to the GPS and cell site data, before I

3     take any position on it, my understanding is that that's

4     excluded from the material that will be provided to the

5     coordinating discovery attorney.

6          Before I take a position, can the government explain

7     why that is something that the coordinating discovery attorney

8     should not receive and also perhaps process it to make it

9     available to defense counsel?

10          THE COURT:  Ms. Maimin?

11          MS. MAIMIN:  As is customary in, I think, every case I

12     have worked on, that data is extremely voluminous.  We can talk

13     about ways to copy it if particular defense counsel want to

14     have copies of it themselves, as opposed to reviewing it at law

15     enforcement or the U.S. Attorney's office, which we would do at

16     their convenience if particular defense counsel wanted to

17     actually have a copy of it.  I have never received a request

18     like that.  I can certainly look into it.

19          MR. LEE:  Judge, I think I speak for everyone, but the

20     option of going to their office and reviewing it at our

21     convenience, I think, is not a viable one.  If the government

22     is agreeing if we make a request, either to give us our copies

23     individually or to provide it to coordinating discovery

24     attorney, I agree to either option, but I'll let the government

25     decide.

G52SBUR1

1          MR. GREENFIELD:  Your Honor, if I might.  David

2     Greenfield, Mr. McClarty's attorney.  The government to stand

3     up to say it is customary in cases like this, this is not a

4     customary case.  This is a one and only case.  It is 120

5     defendants locked up on the same day.  It is not customary of

6     any case that I have ever reviewed any sort of Rule 16 material

7     in the United States Attorney's office.

8          THE COURT:  Thank you.

9          If we have a concern, there will be an opportunity to

10    raise a concern.  Just have a seat.  Have a seat.  Thank you.

11          Ms. Maimin, any reason that it can't simply be

12    produced to the coordinating discovery attorney, or in the

13    absence of that, even though large volume in nature, to the

14    defense counsel?

15          MS. MAIMIN:  I will certainly look into it and report

16    back promptly.

17          THE COURT:  Is your concern just the technological

18    issue?

19          MS. MAIMIN:  It is purely technological.  I believe it

20    will be possible, if that is what counsel prefers, but I want

21    to just double-check before I make a representation about it.

22    I am happy to report back to the court.

23          THE COURT:  Why don't you report back in the same

24    letter regarding access to discovery materials in the ten days

25    from now with a report back confirming if you can that can be

G52SBUR1

1    provided to the coordinating discovery attorney.

2           MS. BENETT:  Megan Benett on behalf of Joel Hargrove.

3    If I can just ask the government to consider also looking into

4    the possibility of web posting, on a secure site, that data

5    which would allow us to access it remotely, but wouldn't

6    require distributing large data files?  It might resolve the

7    issues of having to travel to the U.S. Attorney's office to

8    review it.  I believe their office has done that before on

9    other cases.

10          THE COURT:  Ms. Maimin?

11          MS. MAIMIN:  I'll look into it.  Obviously, if we have

12   a coordinating discovery attorney, that is someone that can

13   assist in this regard.

14          THE COURT:  We need to press forward in the meantime.

15   My assumption is any Rule 16 material that can be provided to

16   defense counsel will be provided to defense counsel.

17          You will report back in ten days confirming how it

18   will be done.  If there are objections to what is offered, I'll

19   hear from defense counsel within five days of that letter.

20          MS. MAIMIN:  OK, your Honor.

21          THE COURT:  Thank you.

22          Anything else?

23          Mr. Greenfield, was that a no?

24          MR. GREENFIELD:  That's correct.

25          THE COURT:  That's our schedule.  Our immediate

G52SBUR1

schedule for the production of discovery, and that turns us to the scheduling question for motions and trial dates and next conferences.

As many of you know, my standard practice is to set, even if very far out, a motions and trial schedule at the first conference. The government has -- I usually get groans about that from everybody -- but the government here has suggested a different process, which you have received in your letter. Just to briefly describe it here, the suggestion to which there was no objection at the last conference, was that I set a conference for five months from now. And in advance of that conference, the government will file a motion to sever into two groups.

Essentially, the first group would be those for whom no superseding indictment is anticipated. And with respect to that group, we will come back in five months and set a motions schedule and trial date or dates, depending on how many defendants are in that group who appear to be going to trial.

With respect to those for whom the government does anticipate filing a superseding indictment, which they have indicated may include capital eligible charges, we would set a conference for a year from now, and at that conference, with respect to that group, set a motion schedule and trial date or dates.

That's the overall proposal made by the government at

18

G52SBUR1

1    the last conference.  I set October 20, 2016, as the first next

2    conference, the conference to take place from five months from

3    now.  We also set a date for the government's severance motion

4    in advance of that conference, which would be September 27,

5    2016.  The government would file its severance motion, and

6    opposition would be due October 11, 2016, and replies

7    October 17, 2016.

8            Also on that date of September 27, when the government

9    files its severance motion, the government would also at that

10   time do two things.  It would file enterprise letters and it

11   would make informal indications to defense counsel at that time

12   whether or not their defendants are anticipated to potentially

13   face capital eligible charges, so we can move at that earliest

14   possible point, even pre-superseding indictment with any

15   capital charges for the potential appointment of learned

16   counsel.  And then I set January 6, 2017, as the outside date

17   for the filing of any superseding indictment with any

18   additional charges or additional defendants.

19           Ms. Maimin, have I accurately summarized the schedule

20   that we have discussed at the last conference?

21           MS. MAIMIN:  Yes, your Honor.

22           THE COURT:  Defense counsel, any objections either to

23   the overall proposal and approach or the specific dates?

24           MR. WIKSTROM:  None from me.

25           MR. NEUFELD:  Russell Neufeld for Jamal Blair.

G52SBUR1

1         THE COURT:  Mr. Neufeld, go ahead.

2         MR. NEUFELD:  My request would be that, if Mr. Blair,

3    learned counsel, and related services be assigned now in both

4    the indictment in paragraph four and the government's press

5    release in paragraph three, they reference the Sadie Mitchell

6    homicide as one of the homicides that they are assuming there

7    will be a superseding indictment about.

8         My client, Mr. Blair, has already pled guilty to that

9    homicide and is currently serving state time on it.  Because of

10   that factual reality, I would like to get learned counsel

11   appointed now.  So I would request that the budget order come

12   from your Honor, the consultation with Mr. Tryst, and that CJA

13   attorneys for Mr. Blair's representation.

14        THE COURT:  I think what I am ultimately going to ask

15   you to do is confirm with Mr. Tryst and put in the application.

16        But, Ms. Maimin, your reaction to the potential

17   appointment at this state?

18        MS. MAIMIN:  Two points, your Honor, I want to

19   clarify.

20        We did list certain murders in the indictment.  That

21   was not an indication that we are certainly going to supersede

22   as to those murders.  Those are murders that are racketeering

23   acts in this case in connection with the racketeering

24   conspiracy.

25        That being said, we have no objection, because this

G52SBUR1

defendant is in a unique position in that he has already pled

guilty to conduct in connection with this murder, so this

unique circumstance, we have no objection to the appointment in

this case.

MR. GREENFIELD:  Your Honor, I would like to be heard

on the same issue.

THE COURT:  Could you find a mic, if you could,

Mr. Greenfield?

MR. GREENFIELD:  For Douglas McClarty.

Based on what I read in the press, I would make the

same application on behalf of my client, Mr. McClarty.  I would

certainly be in touch with Mr. Tryst on that.  I am also on the

capital case panel.  I would ask, obviously, to stay on and

also have learned counsel and budgetary issues determined with

Mr. Tryst at the earliest date possible.

THE COURT:  Before I proceed further, any other

requests in this regard?

I think the reason to set the timeline as early as we

can is to know who, in fact, has any potential likelihood of

facing capital charges, but I am open to the two requests.

I apologize counsel who asked first.  Could you remind

me your name, sir?

MR. NEUFELD:  Russell Neufeld.

THE COURT:  Are you on the CJA capital list?

MR. NEUFELD:  Yes.

G52SBUR1

```
 1              THE COURT:  Thank you.

 2              If you would confer with Mr. Tryst and submit an early

 3    application, I would certainly turn to it immediately.

 4              I think just to flesh out one issue that was expressed

 5    as a concern by Judge Kaplan, and I inquired Ms. Maimin at the

 6    earlier conference, the relevant statute for the appointment of

 7    learned counsel seems to key the appointment to the indictment.

 8    So because we are looking at a pre-indictment stage, Judge

 9    Kaplan had expressed some concerns about ensuring the

10    appropriateness of the pre-indictment stage appointment of

11    learned counsel and confirming on the administrative end the

12    availability of funds in that context.

13              Ms. Maimin, do you want to report what you learned and

14    indicated at the earlier conference?

15              MS. MAIMIN:  Yes, your Honor.

16              Based on our review of the statute and consultation

17    with Mr. Tryst and David Patton, who is responsible for death

18    penalty issues in this district, we don't believe there is any

19    reason not to appoint.  Indeed, there are funds to appoint

20    learned counsel upon the government's notification on that

21    September date that certain defendants are anticipated to face

22    death eligible charges.

23              THE COURT:  OK.  Would it be feasible, Ms. Maimin, to

24    just get from the government that conclusion in a written

25    statement?
```

G52SBUR1

1              MS. MAIMIN:  Certainly.

2              THE COURT:  Thank you.

3              Why don't we fold that into the ten-day-from-now

4    schedule.

5              MR. GREENFIELD:  One question, Judge.

6              THE COURT:  Mr. Greenfield.

7              MR. GREENFIELD:  In regards to discovery, I know

8    myself, Mr. Neufeld, and others here that I dealt with and

9    worked with in the past, the government mentioned wiretaps the

10   and police files.  That would be most important to me, and I do

11   think Mr. Neufeld, that we see that first.  Is that in the

12   first wave of discovery?

13             THE COURT:  Go ahead, Ms. Maimin.

14             MS. MAIMIN:  Yes, your Honor.

15             Right now we are anticipating one main discovery

16   production that's going to have everything that we have in our

17   possession right now to include police files we have and

18   wiretaps.  As we acquire additional evidence, we will produce

19   it.

20             MR. GREENFIELD:  Now, with regard to police files,

21   Ms. Maimin says they have police files in their possession.

22   Are we talking about DD 61s and 5s?

23             THE COURT:  If you would address your question to me,

24   counsel.

25             MR. GREENFIELD:  Are we dealing with DD 61s and 5s

G52SBUR1

which deal with day-to-day investigation conducted by the New

York City Police Department, or are we talking about what you

usually get are vouchers, seizure notices, things of that helm,

that do not go in any way of the preparation of a case

defending on individual who is charged with a murder?

I want to read the day-to-day investigative files of

the NYPD.  If they are not in the government's possession, they

can call up the precinct and get them the same day.  That's

discovery, Judge, and that is what I want.

I think Mr. Neufeld wants, with regard to his client,

and everybody particularly wants with their clients, not the

stuff that we are not going to look at in the trial, so we can

prepare for a trial.

That's the discovery I assume Ms. Maimin is referring

to?

THE COURT:  I think, Ms. Maimin, the question, my

question is, could you describe in general terms the kinds of

materials that you have in your possession regarding state

investigations and the government's view as to what, if any,

its obligations are to obtain and turn over additional

materials?

MS. MAIMIN:  Certainly, your Honor.

We will produce any Rule 16 material at this time

contained in the files, which will include the 61s, that is

complaint reports, invoices, ballistics reports and

G52SBUR1

```
 1    photographs, any scientific analyses done, anything that falls
 2    into Rule 16.
 3            Defense counsel has requested what are called DD 5s,
 4    which are reports made by law enforcement summarizing witness
 5    statements and other material of that kind.  That is not
 6    Rule 16 material, that is 3500 material, which we will produce
 7    at the appropriate time, unless it contains something that we
 8    are required to produce now, such as Brady material, which we
 9    will obviously produce at the earliest juncture.
10            THE COURT:  All right.  We will move on.
11            If there is any specific application or motion be made
12    as to failure for the government to meet its obligations, let
13    me know.
14            Thank you.
15            I think where we left it, does anyone have any
16    objection -- other than what has been voiced and I think we can
17    meet that request -- to the basic approach and the specific
18    deadlines I have put in place?
19            No.
20            Turning then to the one deviation from the
21    government's proposal that Judge Kaplan adopted, and I
22    indicated at the last conference I am inclined to adopt, is
23    that there are potentially motions to be made on the face of
24    the indictment as it exists now that there is no reason to
25    wait.  You should get those briefed and in front of me for
```

G52SBUR1

decision sooner rather than later on the theory that, if they

are there now, they will likely be continued in the superseding

indictments.

What I indicated I was likely to do at the last

conference was to require that any available defense motions

that could be brought on the face of the indictment and

specifically any motions under Rule 12(b), 3(b, (i, (ii, (iii)

or (v), would be briefed, so this includes duplicity,

multiplicity, lack of specificity, and failure to state an

offense.

At the last conference, I set a conference for any

such motions that fall into that category as being due on or

before July 1, 2016, with opposition a month later, August 1,

2016, replies September 1, 2016.

Any objection to that approach or schedule?

MR. WIKSTROM:  None, your Honor.

THE COURT:  Thank you.

One counsel at the last conference indicated a

hypothetical concern, which he was unable to put any

specificity on, that maybe there would be something in the

enterprise letters that might shed some light on the kind of

motions that fall in this category.

I tried to think of any specific examples, again,

defining the category here as what could be brought on the face

of the indictment and not precluding any future motions based

G52SBUR1

1    on future learned information.

2           I gave him, I think, a week if he wanted to pursue

3    that concern, to put it in a letter to me, but otherwise the

4    schedule that I mentioned a moment ago, I anticipate is the

5    schedule I'll put in place at the end of the day after I finish

6    the third conference.

7           We have discussed what would be phase two.  I won't

8    set a specific date now, but I would set a date about a year

9    from now for any defendants who fall into the phase two

10   following the severance motion.  And at that conference, we

11   will set a motion schedule other than the one we just discussed

12   and trial date or dates depending on how many defendants

13   remain.

14          That is where we are in terms of scheduling.  Let me

15   ask defense counsel if there are any other issues you would

16   like to raise or applications at this time?

17          MR. WIKSTROM:  Your Honor, the one thing I would want

18   to schedule --

19          THE COURT:  I need a mic, please.

20          MR. WIKSTROM:  David Wikstrom for Jose Rodriguez.  I

21   just want to clarify, your Honor, I intend to make a bail

22   application for my client, Jose Rodriguez.  My understanding is

23   that your Honor is referring to the magistrate?

24          THE COURT:  Yes.  Initial applications to the

25   magistrate, and then if there are appeals, you can put in a

G52SBUR1

1    letter to chambers and we will get it scheduled.

2          MR. WIKSTROM:  Thank you.

3          MR. LEE:  Your Honor, I may have missed it, on

4    October 20, is there a time for the conference?

5          THE COURT:  Thank you, Mr. Lee.

6          I will presume 10:00 a.m., and if we need multiple

7    conferences, depending on how many people, then we'll schedule

8    them again at 12 and at 2 as needed.  I'll presume at this

9    point 10:00 a.m.  Thank you.

10          MR. SCHMIDT:  Your Honor, Sam Schmidt for Ms. Shanice

11    John.  We have a slight modification of the bail consent.  We

12    can do that now or do that after?

13          THE COURT:  If it is on consent, just put in a letter

14    and I will so order it.

15          Thank you.

16          MR. PITTELL:  Judge, Jeffrey Pittell for Mr. Pearce.

17    When we had a bail hearing in front of Magistrate Francis, bail

18    was granted, over the government's objection, he stated pending

19    appeal.

20          THE COURT:  I think, actually, I stated pending

21    appeal.

22          MR. PITTELL:  The government indicated to me that they

23    are not going to appeal.  I just wanted the record to be clear

24    that the stay has lifted because all conditions have been met,

25    so he should be released today?

G52SBUR1

         MS. MAIMIN:  Yes.  We determined today, your Honor, we
do not seek to appeal that ruling.  Assuming all of the
conditions are met, which we will confirm with pretrial, we
will sign the bond.

         THE COURT:  That is with respect to Mr. Pearce?

         MS. MAIMIN:  Yes.

         THE COURT:  Thank you.  Thank you, Mr. Pittell.

         Anything else?

         Application from the government?

         MS. MAIMIN:  Yes, your Honor.

         We renew our prior request this morning to exclude
time pursuant to the Speedy Trial Act until the October 20
date, assuming your Honor so orders it, in order for the
government to collect and produce discovery, defense to review
discovery, prepare any potential motions, prepare for trial,
and discuss potential pretrial dispositions in the case.

         Any objections?

         ALL PRESENT:  No, your Honor.

         THE COURT:  I won't make my final rule until the third
conference.  I do presume that I will grant the government's
motion and find the ends of justice served by granting
exclusion from speedy trial computations from today's date
until October 20, 2016, will outweigh the interest of the
public and the defendant in a speedy trial for the reasons that
the government just indicated a moment ago.

G52SBUR1

```
1         I presume I will also find under Section 3161(h)(7)

2    that this case is unusual and complex, so unusual and complex

3    due to the number of defendants, the nature and scope of the

4    prosecution, the volume of discovery, that it would be

5    unreasonable to expect adequate preparation for pretrial

6    proceedings and for trial within the time limits established by

7    the Speedy Trial Act.

8         I will, as I have indicated, finalize all of the

9    scheduling matters, as well as the speedy trial application

10   that we have discussed at the end of the day once I have heard

11   from counsel at the third conference, to ensure that there are

12   no persuasive objections to any of the matters that we have

13   discussed.  I think you can safely presume that what we have

14   discussed today will likely be what I finalize in an order at

15   the end of the day.

16        Anything else I can address at this time?

17        MS. MAIMIN:  Not from the government.  Thank you, your

18   Honor.

19        THE COURT:  Anything from defense counsel?

20        ALL PRESENT:  No, your Honor.

21        THE COURT:  I thank all of you for your efforts.  We

22   are adjourned.

23        (Adjourned)

24

25
```