G52SBUR3

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4             v.                          15 CR 95 (AJN)

5   NICO BURRELL, et al.,

6             Defendants.

7   ------------------------------x
                                    New York, N.Y.
8                                   May 2, 2016
                                    3:00 p.m.
9

10  Before:

11                  HON. ALISON J. NATHAN,

12                                  District Judge

13

14

15                  APPEARANCES

16
    PREET BHARARA
17       United States Attorney for the
         Southern District of New York
18  RACHEL MAIMIN
         Assistant United States Attorney
19
    JOHN KENNEY
20       Attorney for Defendant Carletto Allen

21  MITCHELL DINERSTEIN
         Attorney for Defendant Okeifa John
22
    JOHN KALEY
23       Attorney for Defendants Dominique Bass, Durrell Guy

24  RICHARD JASPER
         Attorney for Defendant Devante Joseph
25

G52SBUR3

APPEARANCES
(CONTINUED)


MICHAEL SCACHTER
     Attorney for Defendants Robert Haughton, Martin Mitchell

ED SAPONE
     Attorney for Defendant Dominick Sherland

ERIC SEARS
     Attorney for Defendant Ricardo Stewart

JEAN BARRETT
     Attorney for Defendant Bradley Wilson

DOMENICK J. PORCO
     Attorney for Defendant Kenneth Ruggs

HOWARD TANNER
     Attorney for Defendants Tayquan Tucker, Donque Tyrell

BRYAN KONOSKI
     Attorney for Defendant Daquan Reid

SAM TALKIN
     Attorney for Defendants James Pilgrim, Mark Williams

GRAINNE O'NEILL
     Attorney for Defendant Richard Phillips

DAWN CARDI
     Attorney for Defendant Calvin Ruggs

SCOTT TULMAN
     Attorney for Defendant Hakeem Campbell

G52SBUR3

```
1              (Case called)

2              THE COURT:  I will take appearances on behalf of the

3     government.

4              MS. MAIMIN:  Good afternoon, your Honor.  Rachel

5     Maimin for the government.

6              THE COURT:  Good afternoon, Ms. Maimin.

7              What I will do with the defendants, as I have done

8     with the prior conferences today, I will state the defendant's

9     name as included on the government's letter for the slotting of

10    defendants in the three different conferences, and I'll ask the

11    defendant, when I state your name, to please rise along with

12    the attorney representing them, and the attorney representing

13    that particular defendant, if you would state your name.  I

14    should say, if you're representing the defendant or if you're

15    standing in for counsel for a defendant for today's scheduling

16    conference purposes.

17             Let me begin with asking who is here on behalf of

18    Carletto Allen.

19             MR. KENNEY:  John Kenney, your Honor.

20             THE COURT:  Carletto Allen, please stand.

21             Thank you.  Good afternoon to you both.

22             Okeifa John.

23             MR. DINERSTEIN:  Mitchell Dinerstein for Okeifa John,

24    who is the gentleman in the first row in the fourth seat.

25             THE COURT:  Thank you.  Good afternoon to you both.
```

G52SBUR3

 1                Dominique Bass.

 2                MR. KALEY:  Good afternoon, your Honor.  John Kaley

 3      for Mr. Bass.

 4                THE COURT:  Good afternoon to you both.

 5                Durrell Guy.

 6                MR. KALEY:  Good afternoon, your Honor.  John Kaley

 7      standing in for Michael Bachrach.

 8                THE COURT:  Good afternoon.

 9                Devante Joseph.

10                MR. JASPER:  Good afternoon, your Honor.  Richard

11      Jasper for Mr. Joseph.

12                THE COURT:  Thank you.  Good afternoon.

13                Robert Haughton.

14                MR. SCACHTER:  Good afternoon, your Honor.  Michael

15      Scachter on behalf of Robert Haughton.

16                THE COURT:  All right.  Good afternoon.

17                Let me just add, I'll note that we have many people in

18      the courtroom today.  We are almost at full capacity.  We will

19      accommodate as many people in the room as we can.  We also have

20      an overflow courtroom set up on the fourth floor in Room 444,

21      which has the proceedings taking place here.  And so if you're

22      not comfortably seated but want to watch the proceedings in the

23      overflow courtroom, you are invited to do so.

24                I do note, we have some young folks here today.  And

25      if, because of the need for everybody to hear what is going on,

G52SBUR3

```
 1   if someone is crying, I will ask for you to -- if you can't

 2   quiet them, I know how challenging it is -- if you can't quiet

 3   them, to please go to the overflow courtroom with them so that

 4   today's proceedings are not interrupted.  But no matter what,

 5   you'll be able to listen to the proceedings.

 6          We left off at I met Mr. Haughton and his counsel.

 7          Dominick Sherland.

 8          MR. SAPONE:  Good afternoon, your Honor.  Edward

 9   Sapone for Mr. Sherland.

10          THE COURT:  Good afternoon to you both.

11          Ricardo Stewart

12          MR. SEARS:  Your Honor, Eric Sears for Mr. Stewart.

13          THE COURT:  Good afternoon to you both.

14          Bradley Wilson.

15          MS. BARRETT:  Good afternoon, your Honor.  Jean

16   Barrett on behalf of Mr. Wilson.

17          THE COURT:  Good afternoon to you both.

18          Kenneth Ruggs.

19          MR. PORCO:  Good afternoon, your Honor.  Domenick

20   Porco for Mr. Ruggs.

21          THE COURT:  Good afternoon.

22          Tayquan Tucker.

23          MR. TANNER:  Good afternoon, your Honor.  Howard

24   Tanner for Tayquan Tucker.

25          THE COURT:  Good afternoon to you both.
```

G52SBUR3

1          Donque Tyrell.

2          MR. TANNER:  Judge, Howard Tanner standing in for

3    Larry Sheehan on behalf of Donque Tyrell.

4          THE COURT:  Good afternoon to you both.

5          Daquan Reid.

6          MR. KONOSKI:  Good afternoon, Judge.  Appearing on

7    behalf of the defendant, Bryan Konoski.

8          THE COURT:  Good afternoon to you both.

9          James Pilgrim.

10          MR. TALKIN:  Good afternoon, your Honor.  Sam Talkin

11    for Mr. Pilgrim.

12          THE COURT:  Good afternoon.

13          Mark Williams.

14          MR. TALKIN:  Good afternoon.  Again, Mr. Sam Talkin

15    standing in for Bruce Maffio for Mr. Williams.

16          THE COURT:  Good afternoon to you both.

17          Richard Phillips.

18          MS. O'NEILL:  Grainne O'Neill standing in for Bobbi

19    Sternheim for Mr. Phillips.

20          THE COURT:  Good afternoon to you both.

21          Calvin Ruggs.

22          MS. CARDI:  Dawn Cardi, your Honor, for Mr. Calvin

23    Ruggs.

24          THE COURT:  Good afternoon to you both.

25          Ms. Maimin, Hakeem Campbell was not on your list, is

G52SBUR3

1    that correct?

2              MS. MAIMIN:  Yes, your Honor, but I understand that

3    his defense counsel is waiving his presence solely for today's

4    proceeding.

5              THE COURT:  Mr. Tulman?

6              MR. TULMAN:  Yes, your Honor. Scott Tulman for Hakeem

7    Campbell.  I don't know why my client was not produced, but I

8    trust it won't happen again.

9              THE COURT:  Certainly you can get the transcript from

10   today's proceeding to discuss with him.  But if you desire to

11   come in after discussing it with him for a separate proceeding

12   to do this again, I would be happy to do it.

13             MR. TULMAN:  Thank you, Judge.

14             THE COURT:  Ms. Maimin, Rai Thomas we did see this

15   morning?

16             MS. MAIMIN:  That's correct, your Honor.  He was

17   signed up inadvertently for two conferences.

18             THE COURT:  He was in the first conference this

19   morning?

20             MS. MAIMIN:  Yes.

21             THE COURT:  I believe that covers everyone.

22             Let me say to the defendants, my name is Judge Nathan.

23   I am the district court judge who will be handling this case

24   moving forward.  As I have partly mentioned in my discussions

25   already, I have had multiple conferences today.  This is a

G52SBUR3

large matter.  There are 62 defendants named in the indictment.
We don't have a courtroom big enough, so we have done three
conferences today with approximately 15 to 20 defendants per
conference.

          I have discussed at the earlier conferences a basic
schedule, and I'll explain that schedule and hear from defense
counsel today in this conference whether there are any
questions from the deviation from the schedule or objections to
the schedule that has been discussed so far.

          I will also, at times, refer to another case in front
of one of my colleagues, Judge Kaplan.  The case is called
<u>United States v. Parrish, et al</u>.  And that case, as you may
know, involves also a large number of defendants who were
arrested on the same day, and the allegations in the
indictments are that the two cases involve rival gangs.  And
the government, in advance of the conferences, submitted a
letter proposal suggesting a management process for both cases
given the overlap of issues and similarity of timing.  That is
to say, the two cases are separate, but the proposal with
respect to the two cases is the same.

          I ask defense counsel to consider the scheduling order
Judge Kaplan put out following his initial conferences so that
we can use that as a point of discussion.  I have done that
with the prior conferences this morning.

          As I indicated I would in my order in advance of this

G52SBUR3

conference, I will ask counsel for the government, again,

though we have done it in the prior conferences, of the benefit

of the defendants here now and defense counsel, if you would,

Ms. Maimin, please summarize the charges in the indictment, as

well as the categories of discovery that will be produced, and

then we will move to our scheduling discussion.

          Ms. Maimin.

          MS. MAIMIN:  Certainly, your Honor.

          The defendants are charged in an indictment that

contains four counts.  Each defendant is charged with one or

more of these counts, all of which arise from the defendants'

participation and/or association with the Big Money Bosses

street gang.

          Count One charges a racketeering conspiracy with

multiple predicate acts in connection with that racketeering

conspiracy, including acts of violence and fraud crimes, as

well as narcotics trafficking.

          Count Two is a narcotics conspiracy relating to the

gang's trafficking of narcotics during the charged time period.

          The third count is a substantive narcotics

distribution count that relates to the defendants' possession

with intent to distribute or distribution of narcotics within

1,000 feet of a playground, school, or public housing

development.

          Count Four is a firearms offense, that is the

G52SBUR3

1    discharge of a firearm, or aiding and abetting of the discharge

2    of a firearm, in connection with the narcotics and racketeering

3    conspiracies.

4              There are a number of categories of discovery in this

5    case.  I'll address each one in turn.

6              The first is wiretap material.  The government

7    intercepted multiple telephones in connection with this

8    investigation, and the government will produce the recordings

9    and associated line sheets for these wiretap recordings.  There

10   are hundreds of hours of wiretap recordings in this case,

11   dozens of recordings that the government believes are pertinent

12   at this time.  We will also produce, of course, the application

13   materials in connection with those wiretaps.

14             In order to facilitate defense's review of the wiretap

15   material, which is voluminous, to the extent we have already

16   identified a particular defendant on a wiretap, we will provide

17   or identify those particular line sheets and recordings so

18   defense counsel can at least have an initial point of focus.

19   As we identify additional defendants on the wiretap, which we

20   will do, we anticipate, we will then identify those on a

21   rolling basis for counsel.

22             There were a number of controlled purchases of

23   narcotics in this case by confidential informants or undercover

24   police officers.  In connection with each of those controlled

25   buys, we will produce any audio or video recording, the buy

G52SBUR3

report which provides certain information about the

transaction, and an invoice of any seized narcotics or other

items.

        A particularly voluminous category of discovery in

this case is materials seized or in the process of being seized

pursuant to search warrants of defendants' social media

accounts, such as Facebook accounts.  Each of those accounts

can range in the tens of thousands or even hundreds of

thousands of pages, but as I previously noted to the court, not

each page is pertinent, and to the extent there is some

pertinent information on that page, it is usually pretty

sparse.  It is not necessarily as intimidating as it first

appears.

        We have seized and searched multiple cellular phones

even before the arrests in this case, and we are in the process

of obtaining search warrants for the many cellular phones that

were seized pursuant to the recent arrest of these defendants.

We will produce the application materials as well as any

reports of the contents of these phones.

        We have also obtained prison calls and e-mails

relating to certain defendants who were already in state or

federal custody.  We have also obtained police files, that is

the so-called homicide files or other files relating to

nonfatal acts of violence that we have presently identified as

acts of violence, we may seek to prove in connection with any

G52SBUR3

```
 1     trial of the charged racketeering conspiracy.  To the extent we
 2     have those in our possession, we will produce any Rule 16
 3     material contained in those files, and we will continue, as we
 4     obtain additional files, to produce that material on a rolling
 5     basis.
 6              We have obtained voluminous pen register and GO
 7     location information for many of the defendants in this case.
 8     There was some colloquy in the last conference about the
 9     feasibility of producing that location information to defense
10     counsel, as opposed to what we customarily do, which is have it
11     available for review by defense counsel at our office or law
12     enforcement.  I am still in the process, as the court directed,
13     of determining whether we can produce it to defense counsel.
14     And as your Honor directed, I will update the court
15     accordingly.
16              We searched multiple residences in this case both on
17     the date of the recent takedown and before.  We will produce
18     any application materials and invoices of seized evidence.  Of
19     course, defense counsel is also welcome to inspect any physical
20     evidence during the course of this case.
21              Finally, your Honor, there will be individual
22     discovery for each defendant, namely, their rap sheet and
23     associated arrest reports and the marshal's intake form for
24     each defendant.
25              THE COURT:  Thank you, Ms. Maimin.
```

G52SBUR3

1          What we discussed, with agreement from counsel at the

2     prior conferences, was that the government would produce what

3     you just described that is in its possession within 30 days.

4     And as we will talk about in a moment, that's hopefully with

5     the assistance of a coordinating discovery attorney.  But

6     either way, I am setting a 30-day -- I presume to be setting a

7     30-day deadline for the production of the discovery, and to the

8     extent the government obtains additional Rule 16 discovery

9     materials on an ongoing basis.

10          MS. MAIMIN:  Yes, Judge.

11          THE COURT:  Let me direct to defense counsel now.  I

12     have indicated in the prior conferences that I have assumed and

13     that has been confirmed in the earlier conferences that there

14     would be a desire to have a coordinating discovery attorney

15     appointed.  As it turns out, the three that exist under

16     contract with the AAO, none of them are available.  Jerry Tryst

17     is working to identify other individuals who can potentially be

18     brought in for the task.  That's in the process, but not

19     confirmed yet.

20          In Judge Kaplan's case, Andy Patel and Jesse Siegel

21     have volunteered to be point persons on behalf of the defense

22     to try to work with Mr. Tryst to identify other individuals.

23     And in my morning conference in this case, Judith Vargas also

24     volunteered for the task.

25          My first question is to just make sure I am correct in

G52SBUR3

1    my assumption that if someone suitable can be found, that that

2    is of interest to defense counsel, is there any objection to,

3    assuming someone appropriate can be identified, proceeding with

4    a coordinating discovery attorney?

5              None indicated.

6              Hopefully there will be an update from the folks who

7    have volunteered to serve as a point person on that and Jerry

8    Tryst soon.  But as I have indicated, for purposes of our

9    scheduling deadline, I am setting 30 days from today as the

10   government's deadline one way or the other for the production

11   of the Rule 16 material that's been discussed.

12             We also discussed at the prior conferences the need to

13   facilitate access to discovery material by the incarcerated

14   defendants.  In Judge Kaplan's case, some concern had been

15   expressed about such a large number of defendants needing

16   simultaneous access to devices to review electronic material.

17   The government has indicated it is working with or it will work

18   with the prison facilities to come up with a proposal to

19   facilitate this process.  Ms. Maimin has indicated that I will

20   hear by letter within ten days as to a proposal in that regard.

21             Correct, Ms. Maimin?

22             MS. MAIMIN:  Yes, your Honor.

23             THE COURT:  Any concerns with the 30-day schedule that

24   I have put in place?

25             Yes, counsel.

G52SBUR3

1          MS. BARRETT:  Your Honor, Jean Barrett.  I have been

2     told to talk into a microphone.

3          THE COURT:  It helps.

4          MS. BARRETT:  I am reaching.

5          THE COURT:  Thank you.  Go ahead, Ms. Barrett.

6          MS. BARRETT:  Jean Barrett for Bradley Wilson, your

7     Honor.

8          I have a number of questions for the matter of

9     disclosure of the discovery.  First of all, my question would

10    be to the government as to whether or not we are going to be

11    complying with the electronic discovery guidelines in that the

12    discovery as produced will be produced with consecutive Bates

13    numbers on them, where the Bates numbers are not repeated, and

14    that the documents will be identified in a manner so that they

15    are in an index accompanying them.  That's the first issue that

16    I wanted to raise about the discovery, and perhaps the

17    government can address that.

18          THE COURT:  Let me get the other issues.

19          MS. BARRETT:  In addition to that, your Honor, in my

20    review of the letter, the government discussed the categories

21    of discovery, there were a number of areas where there was a

22    modification of the 30-day rule in that it would be rolling

23    discovery.

24          I am not clear as to what is going to roll and what is

25    going to not roll.  I would assume that all of the affidavits

G52SBUR3

1    and applications for search warrants, etc., would be available

2    already, since those things are not, and that that would be

3    included.

4            Also, I am assuming that the line sheets are going to

5    be available, but I am not clear as to whether or not we will

6    have those line sheets identified by defendant by the time the

7    30 days is expired.

8            In addition to that, are the social media reports

9    going to be identified in a similar way as the line sheets are,

10   in that if what is attributable to an individual defendant, as

11   opposed to having counsel spends hours and hours and hours

12   trying to wade through people's personal social media accounts

13   to no avail.

14           And again, the contents of the cellular phones, it

15   says that the government will produce the application materials

16   and reports of the contents on the phones on a rolling basis.

17   I am assuming the application materials, at least all of those

18   where the applications have already been obtained, that all of

19   that material would be provided.

20           I just wanted to make sure that that was clarified for

21   the record.

22           THE COURT:  Thank you.

23           Ms. Maimin, beginning with the question regarding the

24   organization and production of materials, continuous Bates, and

25   non-repetition and indexing?

G52SBUR3

1              MS. MAIMIN:  Yes, your Honor.  We plan to do that.

2              THE COURT:  I think the second question went to

3      identifying individuals, as I think you indicated that you

4      would do, and I assume in the line sheets, that you would do

5      that within the 30-day period?

6              MS. MAIMIN:  That's correct.  For all the ones we have

7      identified at that time, but to the extent we identify

8      additional people after the deadline, we will continue advising

9      counsel that we have done so.

10             THE COURT:  Well, just spell that out a little bit

11     more.  What are they going to get within 30 days?

12             MS. MAIMIN:  Certainly, your Honor.

13             THE COURT:  What are the line sheets going to look

14     like?

15             MS. MAIMIN:  We are going to produce the entire

16     universe of wiretaps and line sheets to everybody.  To the

17     extent, by that time, we already have identified particular

18     defendants' voices on the wiretaps, and there are a number of

19     them that we have already identified, we will separately

20     produce only those line sheets that are relevant to that

21     defendant so that those can be quickly reviewed by defense

22     counsel.

23             As in cases of this magnitude and this nature, we

24     expect even after the 30 days to identify additional defendants

25     on the wiretap that we hadn't previously identified their

G52SBUR3

voices.  As soon as we have done so, we will promptly notify

defense counsel and provide a similar subset of the line sheets

for those defendants.

THE COURT:  The Facebook, the social media

individualized identification.

MS. MAIMIN:  Yes.

There are a number of social media accounts that we

haven't yet linked to a particular person but we know are gang

related.  Obviously those we won't provide a particular name

for, but to the extent we know it is the Facebook account of a

particular defendant, we will identify it as such.

THE COURT:  Counsel, did that address your questions?

MS. BARRETT:  In part.

The question, following up on the social media issue,

it is my understanding that what the government has said is

they'll identify whose social media account it is.  That

doesn't help us when we are faced with the possibility of using

someone else's social media account as coconspirator evidence,

where there may be discussions of our clients.  And I believe

that it makes more sense or it makes sense to additionally

notify counsel, where discussions are relevant to individual

clients.

We could have a discussion under the coconspirator

rule where you have the discussion of two other people talking

about a third person and the lawyer for the third person

G52SBUR3

1    wouldn't have that information.

2            THE COURT:  Articulate what your specific request

3    would be to the government and we will see if that is a

4    request.

5            MS. BARRETT:  I believe that the material that would

6    be relevant for counsel to review in the social media accounts

7    of other people, things that were relevant to my client.  Just

8    let me make a concrete example.

9            If two of the codefendants are having a conversation

10   about narcotics dealing that mentions my client and that

11   conversation is relevant and admissible or arguably the

12   government wants to admit it against our client eventually down

13   the road, I would like to know that that particular

14   conversation exists.  It is going to be relevant to my

15   determination of what evidence I am going to be able to discuss

16   with my client.  If there is a plea offer, I would want to have

17   that information.

18           THE COURT:  I'll ask again, if I understand the

19   example, but if you could articulate what it is that you're

20   asking the government to do, and then we will see if it is

21   feasible.

22           MS. BARRETT:  That it would not be limited to the

23   accounts of the individuals, but there would be identification

24   of material within those accounts that's relevant to people

25   whose accounts they are not.

G52SBUR3

1          THE COURT:  So you want any information identified in

2    the Facebook, in the social media sites, that is relevant to

3    your client?

4          MS. BARRETT:  Exactly.

5          THE COURT:  You're not talking about specific

6    references to your client or anything like that?

7          MS. BARRETT:  I am talking about references to my

8    client, yes, your Honor.

9          THE COURT:  So not relevance as the standard, but any

10   specific reference to your client?

11         MS. BARRETT:  I don't think anybody can make the

12   determination of the overall absolute relevance of something

13   until it gets down the line, but I certainly would like to know

14   where there are references to my client in somebody else's

15   social media account.

16         THE COURT:  As I understand, Ms. Maimin, what's the

17   government's reaction to identifying not only defendant by

18   defendant their accounts, the materials that is contained in

19   their accounts, but also references to those defendants in

20   other people's accounts?

21         MS. MAIMIN:  Your Honor, I think that is a step beyond

22   what is appropriate and what we are prepared to do here.  We

23   are identifying particular accounts.  We are happy to talk with

24   defense counsel about the evidence against them generally, but

25   it would not be feasible or required for us to do what is being

G52SBUR3

1    asked right now.

2          That being said, we are happy in advance of any

3    hearing or trial, just as we usually do with wiretap evidence,

4    to identify further in advance of trial the universe of social

5    media evidence we could seek to introduce against that

6    defendant.  Not necessarily exclusive, but the best we have

7    early, more advanced of trial than usually we would for

8    exhibits.

9          It sounds like the defense counsel is asking for sort

10   of a preview of potential exhibits at trial.  That's not an

11   appropriate thing to have happen at this juncture in the case.

12         THE COURT:  All right.  That strikes me as right, what

13   obviously all the material would be produced to the extent

14   that, I suppose, one possibility is the searchability of the

15   material for names, references to names, and if there is

16   something I presume that a coordinating discovery attorney can

17   assist with, if it is feasible.

18         To the extent the request is to go beyond the

19   production of the material and the specific identifying of what

20   accounts pertain to which defendants, I do agree, I am not sure

21   it is feasible at this stage, and I don't believe it is

22   required.  That's my conclusion on that.

23         You'll continue to work on the issue, obviously, to

24   see if there is some pinpointing feasibly of a request, and

25   I'll encourage Ms. Maimin to take a hard look at that and see

G52SBUR3

1    if it can be met.  If there is some fundamental disagreement

2    that you believe defendants are entitled to, you can submit an

3    application to me, Ms. Barrett.

4              MS. BARRETT:  Yes, your Honor.

5              In addition to that, the court raises the supplement,

6    reminded me with regard to searchability, and that is that the

7    ESI discovery agreements provide that the information be turned

8    over to us in a searchable form.  I guess I would request that

9    the court order that compliance with the ESI discovery

10   agreement as well.

11             THE COURT:  Ms. Maimin, what's your understanding of

12   the searchability of the material?

13             MS. MAIMIN:  PDFs are searchable.  The line sheets or

14   PDFs.  I don't have a copy of what is being referenced as an

15   agreement right now.  I can't go to that directly.  But I am

16   happy to work with defense counsel and talk to them and talk to

17   the discovery coordinator who is really responsible for a lot

18   of the segregation of discovery by a defendant, should one be

19   appointed in this case, to work with them to make the discovery

20   as easy to review as possible.

21             MS. BARRETT:  Your Honor, I have worked with discovery

22   attorneys before, and this is why I am bringing this stuff up

23   now.  I have worked with discovery attorneys before.  Some of

24   them ensure that as to PDFs being searchable, they have to be

25   OCR, and that is what this provides.

G52SBUR3

1        I'll give my copy to Ms. Maimin so that she can have

2     it.

3        THE COURT:  Again, I appreciate it.  Given the

4     logistics of what we are dealing with, I am going to encourage

5     as much effort as can be made feasibly to ease access to the

6     materials and allow searchability, again, whether there is a

7     coordinating discovery attorney or not.

8        To the extent you have a specific application that you

9     believe you're entitled to something that you're not getting,

10    put in an application and let me know within a reasonable

11    amount of time.

12        MS. BARRETT:  Certainly, your Honor.  Thank you.

13        THE COURT:  I wrote a third point down, but I think I

14    covered all of it.

15        MS. BARRETT:  I guess there was the cell phone

16    information and whether or not the applications for the phones

17    were going to be or the contents were going to be produced on a

18    rolling basis.

19        I think we clarified that the cell phone applications

20    that exist already are going to be provided within the 30 days

21    and then the contents are going to be another issue.

22        The other issue with regard to the cell phones is also

23    the cell site data that was discussed earlier, and I guess we

24    are going to have to let that shake out as it goes along.

25        THE COURT:  Ms. Maimin, yes?

G52SBUR3

1          MS. MAIMIN:  Yes.

2          THE COURT:  Yes to both.

3          So yes, search warrant applications that currently

4     exist will be produced within the next 30 days?

5          MS. MAIMIN:  Yes, your Honor, as well as any reports

6     of contents that already exist.

7          THE COURT:  And any reports of contents that exist

8     within the next 30 days?

9          Access to the cell site data, there is no question, I

10    don't think, there is no dispute as to entitlement to it, it is

11    just the technology question of whether it can be either

12    transferred to defense counsel or made available remotely to

13    defense counsel in some way.

14         So those are the questions I'll hear back from the

15    government within ten days.

16         I guess I think you also asked what, therefore, is

17    rolling as opposed to what would be turned over in the 30 days.

18         Do you want to just repeat on that point, Ms. Maimin?

19         MS. MAIMIN:  The only things that will be rolling are

20    the things we don't have at that point.  We will produce them

21    promptly as we obtain them.

22         THE COURT:  Thank you.

23         Other questions and concerns with the discovery plan

24    for the next 30 days?

25         MS. BARRETT:  Just with regard to the access of our

G52SBUR3

clients to the discovery, which is obviously always an issue.
Just to highlight a couple of things that I have had experience
with in the past.

County jail facilities in some jurisdictions are
willing to allow clients have restricted laptop computers.
Basically, the only purpose those computers have is for the
discovery in the case.  It is my experience that the Bureau of
Prisons is resistant to this, but as I am sure every attorney
at these tables and chairs will tell you, the electronic
equipment supplied by the Bureau of Prisons is inadequate for
the purposes of this.

THE COURT:  Ms. Barrett, I have raised this issue at
every conference with the government.  They are going to report
back in ten days.  If you would be willing to serve as a
defense coordinator on the issue, provide suggestions to the
government, and hopefully perhaps even work together for a
joint proposal that I'll get in ten days --

MS. BARRETT:  Sure.

THE COURT:  -- and make it as useful as possible.  To
the extent there is disagreements, submit your separate
proposal as, and I'll do what I can.

MS. BARRETT:  Sure, Judge.

THE COURT:  Thank you.

Other concerns or issues?

Moving then to our next scheduling matter.  As many of

G52SBUR3

1     you know, my standard practice is to schedule a motion schedule

2     and trial date at the initial conference.  The government's

3     letter proposal suggesting an approach to this case has

4     encouraged a different approach, and usually I get many

5     complaints as to my standard approach, but I'll hear from you.

6            To state it briefly, the government proposes

7     scheduling a conference five months from now, and in advance of

8     that conference, they would submit a severance motion that

9     seeks severance of the case into two groups.  The first group

10    are those defendants for whom the government anticipates no

11    superseding charges.  And with respect to that group, we would

12    come together in five months, and we would schedule motions and

13    trial date or dates depending on how many defendants are in

14    that group and remain in that group and anticipate going to

15    trial.

16           With respect to those defendants that the government

17    seeks or it anticipates a superseding indictment and

18    superseding charges and, as has been indicated, anticipates

19    seeking superseding charges that carry potential capital

20    charges, that group of defendants --

21           I will ask that everyone do remain quiet so that

22    everyone can hear both in the courtroom, as well as the court

23    reporter.  The cross talk is making it difficult.  So everyone

24    will remain quiet unless addressed by me.  Thank you.

25           With respect to those who face potential superseding

G52SBUR3

charges, including potentially capital charges, that group of

defendants would return for a conference in a year's time for

the setting of motions and trial dates.

Have I stated the basic approach proposed, Ms. Maimin?

MS. MAIMIN:  Yes, your Honor.

THE COURT:  Any concerns or objections with that basic

approach?

Let me say the one caveat that I'll address in a

moment is that there is one category of motions that would go

to the face of the indictment that I believe we could schedule

immediately.  Otherwise, that's the plan.

Counsel.

MR. TALKIN:  The biggest concern, we have individuals

facing capital punishment, the death penalty.  We are not going

to have counsel, learned counsel, assigned for a year.

THE COURT:  No, that's incorrect.

The proposal we have discussed is that the government

will give informal notice on September 27 as to all defendants

on whether they may or do not face potential capital charges.

MR. KONOSKI:  At that point you'll assign?

THE COURT:  At that point, applications can be made

for the appointment of learned counsel, as well as confirming

whether lead counsel at this point is on the capital panel, on

the capital list; if not, if there is a request for

substitution of counsel at that point.

1          But the proposal that we have discussed is that, at

2     the time that the government files its severance motion, it

3     would also do the following, as I just said, it would inform

4     defense counsel of whether their defendant faces the

5     possibility of superseding with capital charges.  And also at

6     that time, the government will provide enterprise letters.

7          As early as September 27, we will be in a position,

8     unless there is an application to do so sooner, for

9     applications for appointment of learned counsel.

10         MR. TALKIN:  I understand the logistics and the

11    reality of the situation, but even four months, that's a long

12    time if you have a client facing the death penalty, not to get

13    to mitigation.  Sometimes the people in mitigation need --

14         THE COURT:  Let me say, in the last conference, two

15    counsel who had a basis for requesting earlier appointment of

16    learned counsel I did invite to submit, to confer with Jerry

17    Tryst, to confer with the government -- well, at least to

18    confer with Jerry Tryst and put in an application at an earlier

19    stage.

20         MR. TALKIN:  That makes sense.  Thank you.

21         MS. BARRETT:  Your Honor, may I, with regard to that,

22    just say that the way counsel has been assigned in this case

23    has made every person on the capital panel of this jurisdiction

24    conflicted.

25         THE COURT:  I am fully aware of the number of lawyers

G52SBUR3

engaged in this case.  And David Patton, the federal defender,
is in the process of working on ascertaining out-of-district
learned counsel and capital counsel.

MS. BARRETT:  But we are not going to -- I mean, if
the court were to decide that someone -- that the first
attorney appointed on the case should be from the capital
panel, and the person who was on the case isn't from the
capital panel, there is no option for that substitution either.

THE COURT:  Say that again.

Let me say my understanding.  If we get to the point
where there are capital charges, that person has an existing
counsel.

MS. BARRETT:  Right.

THE COURT:  If that person is on the capital panel,
good, and learned counsel will be appointed.  If that person is
not on the capital panel, then there will be a discussion in an
allocution conference to figure out whether they want to stay
with that person or have capital panel lawyer from in district
or out of district appointed and learned counsel will be
appointed.

MS. BARRETT:  Yes, your Honor.

It is just, the other question that I have is, how do
we know now that we have a reason that our client is within the
target area if we have, for instance, no arrest or we don't
have a gun charge or something like that?

G52SBUR3

1           THE COURT:  Everyone will know in five months.  If you

2    have some basis for coming for an application sooner, I'd be

3    happy to hear it.

4           MS. BARRETT:  Thank you.

5           THE COURT:  Ms. Maimin, anything you want to address

6    with respect to those questions?

7           MS. MAIMIN:  No, I think the court covered it.

8           THE COURT:  Yes, counsel.

9           MR. DINERSTEIN:  Mitchell Dinerstein.  I represent

10   Okeifa John.

11          I come at this from a somewhat different place.  My

12   client is, as I think many of them, not charged in the

13   racketeering conspiracy charge, they're charged with the

14   narcotics conspiracy.  It is unlikely that they are going to be

15   looking at capital offenses down the road.

16          In fact, it is more likely that they are kind of

17   peripheral players.  The narcotics conspiracy does seem to be

18   separate from the racketeering conspiracy in the sense that the

19   large gang is not a member of the narcotics conspiracy.

20          My concern is that I would apparently have to wait

21   five months to make a bail application for my client when he is

22   only charged with narcotics, and I think, your Honor, that is

23   somewhat unfair.

24          THE COURT:  Why do you have to wait five months to

25   make a bail application?

G52SBUR3

1          MR. DINERSTEIN:  I can't make a bail application, I

2    don't know enough about the charges.  I need the government to

3    say to me, that's right, your client is charged with seven acts

4    of selling narcotics, he is not on these tapes, he is not on

5    the wires, he is not on -- you know, he is peripherally

6    involved in this offense, but because he is lumped together

7    with, what is it, 62 other people, 61 other people, he is kind

8    of going along for the ride.  I don't think that is fair.

9          I think the government has an obligation to try to

10   ferret out the people only charged with the narcotics

11   conspiracy and not the racketeering conspiracy.  They have

12   decided to prosecute this case with what I see as kind of a

13   standby indictment charging large conspiracies when some of the

14   individuals aren't even charged with the main conspiracy.

15         I think, your Honor, that we need to get more

16   information up front from the government as to the individuals

17   who are more peripherally involved.

18         THE COURT:  Again, if you can articulate some specific

19   application that you're making.  You can certainly bring a bail

20   application, if there hasn't been one made and you have one to

21   make, bring it to the magistrate judge in the first instance

22   and me for appeal.

23         But what I have to do now is set a deadline of 30 days

24   by which discovery is going to be produced, and we are adding

25   to that with dates for producing more information.

G52SBUR3

1        If you have some application of something else that

2   you're looking for within a time period that can feasibly be

3   met, I am happy to hear it and see and help decide whether it

4   is feasible or not, but who is a more peripheral standard

5   doesn't sound workable.

6        MR. DINERSTEIN:  Well, I understand it is hard to make

7   it workable under the chemistry of these circumstances, but I

8   do believe that the defendants who are more at the bottom of

9   this, that the government has an obligation to inform us of

10  that so that we can and to see whether or not they would either

11  consent to bail or whether we can entertain bail through the

12  magistrate.

13       THE COURT:  There have been bail applications made in

14  the case.

15       Go ahead, Ms. Maimin.

16       MS. MAIMIN:  Bail is an individualized determination.

17  Defense counsel obviously, as court just mentioned, are free to

18  make bail application and we will provide to counsel and the

19  court any pertinent information that would assist the court in

20  that determination.

21       We are also producing discovery in 30 days which, even

22  in a regular case, is a lot.  Our door is always open to talk

23  to counsel about our current view of a particular defendant as

24  to their role in the conspiracy.

25       THE COURT:  Thank you.

G52SBUR3

1          Again, if you have a bail application, there have been

2     bail applications in the case, so I think that at least

3     initiating a conversation with the government on consent or

4     package terms will be a starting point for getting information

5     that you need.

6          In any event, all Rule 16 discovery will be produced

7     within 30 days.

8          It is true, any bail determination will be

9     individualized.  Simply referring to the indictment won't do

10    it.  There has to be information as to the individual

11    defendant.

12         Other concerns with the overall approach?

13         Let me just state the timeline for each of the pieces

14    that we have talked about, and you let me know if there are

15    concerns.

16         I set October 20, 2016, as the five-month conference,

17    10:00 a.m. as a start time.  If we need multiple conferences,

18    we will stagger again at noon and two.  We may not.

19         October 20, 2016 is the next conference.  In advance

20    of that conference, the government's severance motion that we

21    have discussed would be filed on or before September 27, 2016,

22    with any oppositions due October 11, 2016, and any replies due

23    October 17, 2016.  So that would allow us to break into the

24    anticipated two groups of those for whom no superseding charges

25    are anticipated.  Those are the folks at the five-month

G52SBUR3

conference for whom I would set a motion schedule and trial

date.

As I have also said, also on September 27, 2016, the

government will provide letters to defense counsel indicating

informally whether their clients face potential superseding

charges, including the possibility of any capital charges,

which can then trigger application for learned counsel that we

have discussed.

Then, also on September 27, the government would

provide and would file enterprise letters.

Ms. Maimin, if you would, for the benefit of the

defendants, just briefly describe what you anticipate including

in the enterprise letter.

MS. MAIMIN:  An enterprise letter is a letter to the

court and defense counsel listing the government's

understanding at that time of the acts of violence it would

prove at any trial of the charged racketeering conspiracy.  It

will provide the who, what, when, and where for each act of

violence, to put the defendants on notice that we will be

proving those acts up in any trial direct to the conspiracy.

THE COURT:  Thank you.

Again, September 27 date for those.

Then the last schedule that I set, I think, just

pertains to a category of initial motions.  This was not part

of the government's original proposal, but something Judge

Kaplan adopted, and I have raised it with agreement in the
earlier conferences.  That's that any motion that can be
brought on the face of the indictment, and specifically motions
under Federal Rule of Criminal Procedure 12(b)(3), (b)(1), (ii,
(iii), or (v), so duplicity, multicity, lack of specificity,
and failure to state an offense, those motions, again, which
could be brought on the face of the indictment would be brought
and briefed sooner on the theory that any such lurking issues
should be fleshed out because they would presumably continue in
any superseding indictment.

       So we don't need to wait for those.  The schedule I
discussed was any such motions in that category would be filed
on or before July 1, 2016, any oppositions due August 1, 2016,
and any replies due September 1, 2016.

       With that overall statement of the schedule, a second
conference, severance motion, and the other dates in these
initial motions, any concerns with that schedule?

       Nothing indicated.

       One counsel at an earlier conference indicated some
question as to whether the motions that I just discussed, the
earlier motions, might require more information for filing.  He
suggested the possibility of needing the enterprise letters,
for example.  I had trouble understanding how a motion that is
on the face of the indictment and not precluding any future
motions that are not simply on the face of the indictment, what

G52SBUR3

1    might fall into that category.  I gave a week for the filing of

2    any letter raising concerns in that regard.

3              I think I have covered all of the schedule that I have

4    set thus far in the case.

5              Ms. Maimin, anything further?

6              MS. MAIMIN:  That covers it, your Honor.

7              THE COURT:  Any other requests from counsel regarding

8    scheduling issues?

9              MR. KONOSKI:  Judge, not particularly related to

10   scheduling, slightly off topic.  I can wait a moment once the

11   scheduling issues are done.

12             THE COURT:  I think we are finished with scheduling.

13             Go ahead.

14             MS. CARDI:  Dawn Cardi.  If we want to schedule a bail

15   hearing, should we get in touch with the magistrate?

16             THE COURT:  For initial bail hearings, get in touch

17   with the magistrate.

18             MR. KONOSKI:  That actually was my question.  I spoke

19   to prosecution, I spoke to the deputy, I already explained the

20   issues to my client.

21             For the client's benefit, your Honor, are you hearing

22   any bail applications today or must they work with the

23   magistrate?

24             THE COURT:  I am not.  Given the volume, initial

25   applications are through the magistrate judge for all.  I have

G52SBUR3

1   heard no bail applications.  All initial bail applications are

2   to the magistrate judge.

3           MR. KONOSKI:  Thank you, Judge.

4           THE COURT:  Thank you.

5           MS. WALSH:  Mark Schachter, also not on scheduling.

6           Your Honor, Mr. Haughton has been told that he is not

7   able to see a medical professional because of the separation

8   order that is in place.  It is vital that he receive medication

9   he has been on for the last two years.

10          Your Honor, we ask that the Bureau of Prisons be

11  directed to provide Mr. Haughton access to a medical provider.

12          THE COURT:  For this, and if there are any similar,

13  I'll just say, first step is Ms. Maimin for contact with the

14  prison and see if it can get done.  If it can't, submit a

15  proposed order to me by ECF, and I'll act on it quickly.

16          MS. WALSH:  Thank you.

17          THE COURT:  Any other scheduling issues or other

18  application from counsel?

19          Ms. Maimin?

20          MS. MAIMIN:  We would just renew our request for the

21  court to exclude time pursuant to the Speedy Trial Act between

22  today and October 20, should the court set that date for the

23  next conference, in order to afford the government the

24  opportunity to produce discovery, for the defense to review

25  discovery, for the defense to prepare any potential motions,

G52SBUR3

prepare for trial, discuss any potential dispositions of the
case, and also, as the court had earlier pointed out, because
this is a complex case under the statute.

THE COURT:  Any objections?

ALL PRESENT:  No objection.

THE COURT:  As I have in the other conferences, I am
going to set in stone the final schedule that we discussed by
order after the conference, but I anticipate concluding there
that the ends of justice served by granting an exclusion from
speedy trial computations from today's date through October 20,
2016, which I have set as a next conference date, outweigh the
interest of the public and the defendants in a speedy trial, as
this time is necessary to allow the government to produce
discovery, counsel to review discovery, consider and prepare
any available motions, preparing for trial, as well as to
consider any negotiations toward a pretrial resolution of the
case.

And I also anticipate finding, under Section
3161(h)(7), that this case is so unusual and complex due to the
number of defendants, the nature and scope of the prosecution,
and the volume of discovery, that it would be unreasonable to
expect adequate preparation for pretrial proceedings and for
trial within the time limits established by the Speedy Trial
Act.

With that, counsel, is there anything else I can

G52SBUR3

1    address at this time?

2              MS. MAIMIN:  Not from the government.  Thank you.

3              THE COURT:  Thank you.  We are adjourned.

4              (Adjourned)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25